CHOY, Circuit Judge:
This is an appeal from a judgment of the bankruptcy court, affirmed by the bankruptcy appellate panel, 19 B.R. 668, in an action to determine the dischargeability of a debt.
The bankruptcy court held that a state court money judgment, won by Lawrence Tractor Co. (Lawrence) in an action against former employee Joseph Gregory for embezzlement, was dischargeable in Gregory’s Chapter 13 bankruptcy proceeding although Gregory’s confirmed plan provided for zero payment on the claim.
We conclude that (1) Lawrence’s failure to object to confirmation of the plan or to appeal from the confirmation order precludes it from challenging the plan on the ground of good faith in proceedings to determine the dischargeability of its claim; (2) by including a provision for zero payment on unsecured claims, Gregory’s plan “provided for” those claims as required by 11 U.S.C. § 1328(a), and therefore those claims were dischargeable; and (3) the notice received by Lawrence of the confirmation hearing was sufficient to put it on inquiry that its claim might be affected and therefore did not fail to satisfy due process requirements. Therefore, we affirm.
I. FACTS
Gregory filed his Chapter 13 bankruptcy petition on November 8, 1979.[1] At that time he owed appellant Lawrence $16,-540.58 as the result of the state court judgment against him for embezzlement.
On November 9, 1979, the bankruptcy court sent to all creditors, including Lawrence, an “Order for Meeting of Creditors.” This order gave notice that the creditors’ meeting required by 11 U.S.C. § 341(a) was scheduled for December 17, 1979, at 1:00 p.m. and that the confirmation hearing in bankruptcy court would follow at 2:00 p.m.
*1120 The order stated that Gregory’s “plan of arrangement” divided creditors into seven groups. Group six was “general unsecured creditors.” Beneath the list of groups the order stated: “The debtors’ plan does not propose payment of unsecured creditors.” The order also stated: “The plan proposes payment to the Trustee of $147.71 monthly.” Lawrence did not receive a copy of Gregory’s plan with the order.
The creditors’ meeting and the confirmation hearing were held as scheduled on December 17. Lawrence was not represented at either. On January 2, 1980, the bankruptcy court issued its order confirming the plan. Lawrence did not appeal.
Gregory’s plan actually proposed only six monthly payments of $147.71, to be applied to the claim of a single secured creditor to whom Gregory owed approximately $2,500 on an automobile loan. At the end of six months, Gregory was to pay the Trustee a sufficient amount to “complete the plan,” 1. e., to satisfy the secured debt in full. The plan stated: “5. General Unsecured Creditors. This plan provides for -0- payment to unsecured creditors requesting that said debts be discharged.”
In March 1980, two months after the plan was confirmed, Lawrence filed its “Complaint to Determine Dischargeability of Debt,” alleging that its claim was nondischargeable because: (1) it was derived from embezzlement;[2] (2) only debts “provided for” in a plan are dischargeable under section 1328(a), and a debt for which zero payment is proposed is not so provided for; and (3) it did not receive reasonable notice within which to file an objection to the confirmation of the plan, and the plan should not have been confirmed because it was not proposed in good faith.
Gregory made only two of the six monthly payments. Before the end of the six months, however, he refinanced his car and received a check for $2,220.74, which he assigned to the Trustee. A surplus of $110.16 remained after the Trustee paid off the secured claim, and Gregory consented to the Trustee’s distribution of this surplus on a pro rata basis to his unsecured creditors, including Lawrence.
In September 1980 a hearing was held on Lawrence’s complaint. On February 5, 1981, the court filed its memorandum opinion, stating in part:
The Court grants the Motion of the Debtor [Gregory] to amend his plan nunc pro tunc to reflect the payments actually made by the Trustee to unsecured creditors on a pro-rata basis, including Plaintiff in this case [Lawrence].
In view of the foregoing amendment it cannot be said that Plaintiff’s debt was not provided for by the plan. The Court therefore must find that the debt of the Defendant to Plaintiff was dischargeable under 1328a [sic] of the Code.
It should be noted that in this case Debtor’s total net income was $624.48 per month, so that it can hardly be said that the plan was not Debtor’s best effort.
Lawrence appealed to the bankruptcy appellate panel, arguing again that a Chapter 13 plan that proposes zero payment on an unsecured claim does not “provide for” the claim. Lawrence also argued that the bankruptcy court lacked authority to amend the plan “nunc pro tunc,” thereby attempting belatedly to “provide for” Lawrence’s claim.
The panel affirmed, holding that a plan that expressly proposes to pay nothing on unsecured claims “provides for” those claims, which then become dischargeable after all payments under the plan are completed. Since it concluded that the original plan “provided for” Lawrence’s claim, it did not consider whether the bankruptcy court’s “nunc pro tunc” amendment was proper.
II. ISSUES
1. After the order of the bankruptcy court confirming Gregory’s “zero-payment” *1121 plan became final, was Lawrence precluded from challenging its legality in proceedings to determine the dischargeability of its claim?
2. Did the bankruptcy appellate panel err in holding that Gregory’s plan, which proposed zero payments on Lawrence’s claim, “provided for” that claim so that it was dischargeable under section 1328(a)?
3. Did Lawrence receive adequate notice of the hearing to confirm the plan?
III. ANALYSIS
A. “Zero-Payment” Plans
Lawrence’s initial argument is that a plan proposing zero payment on unsecured claims is not confirmable under the Bankruptcy Code.
Section 1325, which sets out six conditions that a plan must satisfy before it will be confirmed, does not establish a minimum permissible payment. Section 1325(a)(3), however, requires that the plan be “proposed in good faith.” In In re Goeb, 675 F.2d 1386 (9th Cir.1982), this court held that the “good faith” condition does not require substantial repayment to unsecured creditors. Instead, according to Goeb, good faith is determined by asking whether the debtor acted “equitably” in proposing the plan.[3] If so, then a plan proposing even nominal payments to unsecured creditors of one cent on the dollar must be confirmed.
However, noting the controversy among courts and commentators, 675 F.2d at 1388, n. 3, the court declined to rule on the legality of a zero-payment Chapter 13 plan. Id. at 1388 n. 5.
If the bankrupt can show good faith, it seems almost pointless to distinguish between nominal-payment and zero-payment plans. In fact, the view from the trenches appears to be that zero-payment plans are administratively preferable. At the hearing on Lawrence’s complaint, the bankruptcy judge stated: “It is going to raise, I’m sure, a great can of worms if I rule that it is not discharged because it wasn’t provided for in the plan because I assume that I will get a deluge of one percent plans and Mr. Jarrett will probably threaten to resign as [the local Chapter 13] trustee if I do.” At oral argument, Gregory’s counsel stated that the bankruptcy court in Fresno has confirmed over three hundred zero-payment plans.
However, this court need not rule on the legality of zero-payment plans in general or of Gregory’s in particular. The order confirming the plan has become final. Lawrence’s failure to raise this objection at the confirmation hearing or to appeal from the order of confirmation should preclude its attack on the plan or any provision therein as illegal in a subsequent proceeding.
This was the approach of the bankruptcy appellate panel, which correctly stated that it was without jurisdiction to consider Gregory’s “good faith” objection to the plan. “Questions of this sort should have been raised at the time of confirmation and by appeal immediately thereafter. The time for appeal on the issue of good faith had long passed when the instant adversary proceeding was instituted.”[4]
*1122 B. The “Provided-for” Issue
Section 1328(a) reads in part:
As soon as practicable after completion by the debtor of all payments under the Plan ... the court shall provide the debt- or a discharge of all debts provided for by the Plan ....
(Emphasis added.)
Lawrence argues that plans proposing zero payment on unsecured claims do not “provide for” those claims, which are therefore nondischargeable.
We agree with the conclusion of the bankruptcy appellate panel that the phrase “provided for” in section 1328(a) simply requires that for a claim to become discharge-able the plan must “make a provision for” it, i.e., deal with it or refer to it. This construction seems reasonable, and Lawrence’s efforts to support its construction of “provided for” as meaning “supplied a benefit” are not convincing.
Lawrence argues that if a plan may “provide for” a debt with a zero-payment provision then there is no practical difference between such a plan and a plan without any provision at all for unsecured debts. However, as the bankruptcy appellate panel noted, “there is a significant difference between a plan which does not acknowledge an unsecured claim and a plan which proposes to pay nothing on a claim. In the former case, the unsecured creditor has no ability to object, in a meaningful way, to confirmation of the debtor’s plan.”
Lawrence cites cases interpreting provisions of the Bankruptcy Act of 1898 (the old act) allegedly suggesting that “provided for” meant “provided for with consideration.” However, the old act required that Chapter XIII plans be approved by all creditors, not just secured creditors as under the Code, and its discharge provisions were stricter. As the bankruptcy appellate panel stated, under the old act “the possibility of confirming a proposed zero-payment plan was practically nonexistent.” Therefore, reliance on interpretations of -the old act in this area is not appropriate.
By stating that “this plan provides for [e.mphasis added] -0- payment to unsecured creditors requesting that said debts be discharged,” the plan made a provision regarding or “provided for” those debts, and once the order confirming the plan became final and the required payments were made, they became dischargeable under section 1328(a).[5]
C. Due Process
Lawrence argues that the notice sent to creditors did not meet constitutional due process standards.
As noted above, prior to the confirmation hearing Lawrence received only the “Order for Meeting of Creditors.” The only relevant portion of the order states: “The debtors’ plan does not propose payment of unsecured creditors.” Lawrence points out that this statement is susceptible to two interpretations: “It can be read to say that unsecured claims are mentioned in the plan and are to be given nothing, or it can be read to state that ‘the debtor’s plan makes no proposal concerning payment of unsecured creditors.’ ” Although the plan is more explicit — “This plan provides for -0-payment to unsecured creditors requesting that such debts be discharged” — Lawrence did not receive a copy of the plan.
*1123 The Code, however, does not require that the plan be sent to all creditors. Section 1324 states that “[a]fter notice, the court shall hold a hearing on the confirmation of the plan. A party in interest may object to the confirmation of the plan.”[6] It would clearly be preferable if each creditor of a debtor who has initiated a Chapter 13 proceeding received, in addition to notice of the confirmation hearing, a copy of the debtor’s plan and an explicit statement of the plan’s proposal regarding its claim. However, the Code does not require such detailed notice, and we hold that in the circumstances of this case, although the notice received by Lawrence was not unambiguous, it was not constitutionally inadequate.
When the holder of a large, unsecured claim such as Lawrence receives any notice from the bankruptcy court that its debtor has initiated bankruptcy proceedings, it is under constructive or inquiry notice that its claim may be affected, and it ignores the proceedings to which the notice refers at its peril. “Whatever is notice enough to excite attention and put the party on his guard and call for inquiry, is notice of everything to which such inquiry may have led. When a person has sufficient information to lead him to a fact, he shall be deemed to be conversant of it.” D.C. Transit Systems, Inc. v. United States, 531 F.Supp. 808, 812 (D.D.C.1982) (citations omitted). The notice included the names of the bankruptcy judge, the trustee, and Gregory’s attorney, and presumably any of them could have helped Lawrence obtain a copy of the plan or informed it as to the plan’s proposal concerning its claim. If Lawrence had made any inquiry following receipt of the notice, it would have discovered that it needed to act to protect its interest.
IV. CONCLUSION
The total discharge of a claim for almost $17,000 against a convicted embezzler upon completion of a Chapter 13 plan which required only six monthly payments of less than $150 seems grossly unfair. However, the claim is legally dischargeable. Lawrence might have objected to the confirmation of the plan on the ground that it was not proposed in good faith. Having permitted the confirmation order to become final, however, it is precluded from raising that objection in subsequent proceedings. By stating that zero payment was to be made on unsecured debts, the plan “provided for” those debts within the meaning of 11 U.S.C. § 1328(a) and when all payments were completed, they became dischargeable. Finally, the notice received by Lawrence was at least sufficient to put it on inquiry notice that its claim was affected.
AFFIRMED.

. The Bankruptcy Reform Act (the Code), 11 U.S.C. §§ 101 et seq., became effective on Oct. 1, 1979, and therefore applies to this action.

. This argument was rejected below and Lawrence does not urge it here. If all payments under the plan are made, § 1328(a) clearly authorizes the discharge of all debts provided for in the plan, including fraud-related debts that are not dischargeable in Chapter 7 or 11 proceedings, excepting only alimony and support payments, and certain long-term obligations.

. Given the nature of bankruptcy courts and the absence of congressional intent to specifically define “good faith,” we believe that the proper inquiry is whether the Goebs acted equitably in proposing their Chapter 13 plan. A bankruptcy court must inquire whether the debtor has misrepresented facts in his plan, unfairly manipulated the Bankruptcy Code, or otherwise proposed his Chapter 13 plan in an inequitable manner. Though it may consider the substantiality of the proposed repayment, the court must make its good-faith determination in the light of all militating factors.
675 F.2d at 1390 (emphasis in original).

. The facts presented to this court suggest that Gregory’s plan might have been vulnerable to challenge on the absence of good faith ground. Bankruptcy courts have held that although the use of Chapter 13 to obtain the discharge of debts nondischargeable under Chapter 7 by itself is not sufficient to prove bad faith, it is a factor to be considered with others. See, e.g., In re Meltzer, 11 B.R. 624, 627 (Bkrtcy.E.D.N.Y.1981) (good faith consistently found to be absent “where all the facts lead inexorably to the conclusion that the petition has been filed to avoid, at minimal cost, a[n otherwise] nondischargeable debt”). Although § 1322(c) permits plans to run for three,' and in some cases, for *1122 five years, Gregory’s plan lasted only six months, the minimum period within which he could pay off his one secured debt, and no explanation was offered why he could not continue the plan for an additional period and make some payment on his unsecured debts.

. Because we conclude that the original plan “provided for” Gregory’s unsecured debts, we need not consider at length Lawrence’s argument that the bankruptcy court’s “nunc pro tunc” amendment of the plan to reflect the miniscule payments ultimately made to unsecured creditors was improper. Lawrence correctly points out that § 1329(a) only authorizes amendments before the completion of payments. Therefore, the amendment here, which came after all payments were completed, was unauthorized. However, the effect of the amendment was merely to formalize an apparently gratuitous gesture — the distribution of $110.16 in “surplus” funds remaining after Gregory’s single secured creditor was paid. It did not prejudice the unsecured creditors.

. All creditors are obviously parties in interest. Cf. § 342, which applies to all proceedings under the Code including Chapter 13 proceedings:
“There shall be given such notice as is appropriate of an order for relief in a case under this title.”