In re COASTAL ALASKA LINES, INC., Debtor.

ZIDELL, INC., Appellant,

v.

Daniel E. FORSCH, Esq., Trustee, Appellee.

No. 89–35311.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 9, 1990.

Decided Nov. 27, 1990.

Kevin D. Padrick, Miller, Nash, Wiener, Hager & Carlsen, Portland, Or., for appellant.

Glenn R. Nelson, Oles, Morrison & Rinker, Seattle, Wash., for appellee.

Before WRIGHT, POOLE and BRUNETTI, Circuit Judges.

BRUNETTI, Circuit Judge:

Zidell, Inc. ("Zidell") filed a late proof of claim in the Chapter 7 bankruptcy proceeding of Coastal Alaska Airlines, Inc. ("CAL"). The trustee objected to the late filing. The bankruptcy court sustained the trustee's objection to Zidell's claim and denied Zidell's motion for enlargement of time to file its claim. The district court affirmed the bankruptcy court's order, and Zidell appeals. We affirm.

### STATEMENT OF FACTS [1]

On April 18, 1986, the debtor, Coastal Alaska Lines, Inc. filed its Chapter 7 petition. CAL did not list Zidell as a creditor. On June 9, 1986, the Clerk of the Bankruptcy Court sent a notice to CAL's listed creditors which established a claims deadline of September 30, 1986. Since Zidell was not listed as a creditor, it did not receive notice.

In early August, 1986, Zidell learned that Coastal Hawaiian Lines, Inc. ("CHL") had filed a Chapter 7 bankruptcy. CHL listed Zidell as a creditor. CHL is a subsidiary of CAL. Zidell's general counsel, Mr. Bickler, contacted CHL's attorneys, who were also CAL's attorneys, about the status of CAL. CAL's attorney informed Bickler that CAL had filed bankruptcy, but did not inform Bickler that any claims bar deadline had been set. Bickler asserts that CAL's attorney affirmatively stated that no deadline had been set. Based on this conversation, Bickler understood that CAL's Chapter 7 proceeding was a "no asset" case.[2]

1. Both parties agree that all relevant facts of this case are not in dispute.

2. There may be a factual dispute as to whether CAL's attorney affirmatively stated that CAL's bankruptcy was a "no asset" case. However, this factual dispute is not relevant to the legal issues in this case. It is undisputed that the

Bickler requested copies of the documents that had been filed to date. He subsequently received from CAL's attorney copies of the notice of the first creditors' meeting, the schedules, and the petition. The notice of the first creditors' meeting stated:

4. It appears from the schedules of the debtor that there are no assets from which any dividend can be paid to creditors. It is unnecessary for any creditor to file his claim at this time in order to share in any distribution from the estate. If it subsequently appears that there are assets from which a dividend may be paid, creditors will be notified and given an opportunity to file their claims.

The Notice of Creditors' Meeting also advised creditors who desired information to contact CAL's attorney. The schedules revealed that Zidell had not been named as a creditor. None of the materials referred to the September 30, 1986 claims deadline, or indicated that any deadline had been set.

On October 30, 1986, Zidell wrote to the Bankruptcy Court clerk and asked to be added to the CAL mailing list. On January 29, 1987, Zidell received notice to file a claim in the bankruptcy of CAL's subsidiary, CHL.

Zidell states that, prompted by the notice in the CHL case, it filed proofs of claim in both the CAL and CHL bankruptcies on April 27, 1987. Zidell's proof of claim for the CHL bankruptcy was received by the clerk on April 27, 1987, but the clerk was unable to find a contemporaneous claim in the CAL bankruptcy.[3]

In October, 1987, Zidell received notice of the CAL trustee's intention to make a distribution to creditors and learned that there was no record of its claim in the CAL bankruptcy. In late October, 1987, Zidell filed a proof of claim for $614,423.73 in the CAL bankruptcy.

Notice to Creditors that Zidell received stated that there were "no assets" in CAL's bankruptcy.

3. Zidell did not produce a file-stamped copy of the CHL claim, but produced a copy of its draft of the claim, as well as a copy of the Federal Express airbill indicating that an overnight letter was received by the Clerk on April 27, 1987.

On August 24, 1988, Daniel E. Forsch, the CAL trustee, filed an objection to Zidell's claim on grounds that it was not timely filed. Zidell then asked the court for enlargement of time for filing its proof of claim pursuant to Bankruptcy Rule 9006(b)(2) on grounds of excusable neglect. After a hearing on September 23, 1988, the bankruptcy court sustained the trustee's objection and denied Zidell's motion to enlarge time.

The Bankruptcy Court held that Zidell failed to show that its claim fit any of the exceptions for late filing set out in Bankruptcy Rule 3002(c), and that time for late filing "may be extended only to the extent that one of the specific exceptions of Bankruptcy Rule 3002(c) applies." The court also designated Zidell's claim as a third level claim under 11 U.S.C. § 726(a)(3) entitled to distribution from the estate only after payment of § 726(a)(1) and § 726(a)(2) claims. Zidell appealed to the district court.

On March 27, 1989, the district court affirmed the bankruptcy court's order. The court held that the bankruptcy court correctly decided that the filing deadline can only be extended if one of the exceptions to Bankruptcy Rule 3002(c) applies, and, therefore, it had no equitable discretion to extend the time. The district court also affirmed the denial of Zidell's request to participate in the distribution of assets under 11 U.S.C. § 726(a)(2)(C). Zidell then appealed to this court.

### DISCUSSION

On appeal, Zidell argues that the district court erred for three reasons. First, Zidell contends that its due process rights were violated because it was deprived of its claim without being given notice of the claims bar date. Zidell also argues that the bankruptcy court has equitable discretion to extend time for filings and should have exercised that discretion here. Finally, Zidell argues that it should be allowed to participate in the distribution of the estate under 11 U.S.C. § 726(a)(2)(C) because its

late filing was due to lack of knowledge of the claims deadline. We reject each of Zidell's arguments and hold that its claim was properly barred.

### I. *Due Process*

Zidell asserts that, where the creditor has not received actual notice of the claims bar date, it violates due process for the court to refuse to extend the filing time for the claim.[4] To support this proposition, Zidell cites *City of New York v. New York, New Haven & Hartford R.R.*, 344 U.S. 293, 73 S.Ct. 299, 97 L.Ed. 333 (1953). In *New York*, the Supreme Court refused to bar a claim against a creditor, New York City, which knew that a reorganization was taking place and failed to file a timely claim. The *New York* Court stated:

> Nor can the bar order against New York be sustained because of the city's knowledge that reorganization of the railroad was taking place in the court. The argument is that such knowledge puts a duty on creditors to inquire for themselves about possible court orders limiting the time for filing claims. But even creditors who have knowledge of a reorganization have a right to assume that the statutory "reasonable notice" will be given them before their claims are forever barred. When the judge ordered notice by mail to be given the appearing creditors, New York City acted reasonably in waiting to receive the same treatment.
>
> The statutory command for notice embodies a basic principle of justice—that a reasonable opportunity to be heard must precede judicial denial of a party's claimed rights.

*New York*, 344 U.S. at 297, 73 S.Ct. at 301.

■ In the present case, the trustee concedes that Zidell did not receive actual notice of the claims bar date. However, Zidell knew much more than simply that CAL was in bankruptcy. Zidell received a copy of the first notice of creditors' meeting which stated:

---

4. Although the district court did not rule on the due process claim, Zidell did raise the issue in the district court. Thus, it is properly before this court.

4. It appears from the schedules of the debtor that there are no assets from which any dividend can be paid to creditors. It is unnecessary for any creditor to file his claim at this time in order to share in any distribution from the estate. *If it subsequently appears that there are assets from which a dividend may be paid, creditors will be notified and given an opportunity to file their claims.*

Thus, Zidell knew that, if assets were found, the court would notify the *listed creditors* and give them an opportunity to file their claims. Zidell also knew that it had not been named as a creditor and therefore would not receive the statutory notice. Under these circumstances, Zidell had sufficient notice and reasonable opportunity to appear as a creditor and receive statutory notice. It should have had itself added to the list of creditors in order to preserve its rights. Unlike the creditor in *New York*, Zidell did not act reasonably in waiting to receive notice.

In *Matter of Gregory*, 705 F.2d 1118, 1123 (9th Cir.1983), this court rejected a due process argument similar to Zidell's. In *Gregory*, an unsecured creditor received the Order for Meeting of Creditors, which stated it did "not propose" payment of unsecured creditors. The creditor did not receive the bankrupt's plan, which explicitly provided for zero payment to unsecured creditors. *Id.* at 1122. Chapter 13 does not require that the plan be sent to all creditors. *Id.* at 1123. We held the creditor in *Gregory* had received constitutionally adequate notice, reasoning that "[w]hen the holder of a large, unsecured claim ... receives any notice from the bankruptcy court that its debtor has initiated bankruptcy proceedings, it is under constructive or inquiry notice that its claim may be affected, and it ignores the proceedings to which the notice refers at its peril." *Id.* at 1123.

We have applied *Gregory* in a situation where the unscheduled creditor received actual notice of bankruptcy proceedings from the debtor's counsel. *See In re Price*, 871 F.2d 97, 99 (9th Cir.1989) (debtor's counsel gave creditor's counsel actual notice of the bankruptcy proceedings during state court litigation of the creditor's claim). Like the creditors in *Gregory* and *Price*, Zidell actually received information about the bankruptcy proceedings that was sufficient to put it on inquiry notice. Its due process claim thus fails.

Zidell relies upon *In re CRC Wireline, Inc.*, 103 B.R. 804 (Bankr.N.D.Tex.1989), to support its argument that it had no duty of inquiry because it was a creditor known to CAL. We reject *CRC Wireline* as premised upon an erroneous view of *Gregory*. The court in *CRC Wireline* attempted to distinguish *Gregory* by characterizing it as a case involving an "unknown" creditor with actual knowledge of the bankruptcy. *See* 103 B.R. at 808. The facts related in the *Gregory* opinion expose this purported distinction as error. When Gregory filed for bankruptcy, the creditor in question already had reduced its claim against him to judgment. *Gregory*, 705 F.2d at 1119.

Zidell also relies upon *In re Barsky*, 85 B.R. 550 (C.D.Cal.1988). *Barsky* is distinguishable. The United States District Court for the Central District of California read *New York* as holding that a creditor was entitled to "all the notice required under the statute." *Id.* at 553. Since the creditor in *Barsky* was listed in the bankruptcy schedules but did not receive the notice required by the Bankruptcy Rules from the clerk of the court, the creditor's claim could not be barred as untimely. By contrast, Zidell knew that it was not listed as a creditor. Zidell knew that, unless it took appropriate action, it would not receive, nor was the court required to give, the statutory notice. Under these circumstances, we find no violation of Zidell's due process rights.

## II. *Equitable Powers*

[2] Zidell argues that the bankruptcy court has equitable discretion, apart from Rule 9006, to grant extensions of time for filing a proof of claim and that the bankruptcy court abused its discretion by not

granting such an extension.[5] Zidell bases its argument on the bankruptcy court's equitable jurisdiction and general powers under 11 U.S.C. § 105(a), which states that, "the court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title."

While Zidell concedes that Rule 9006 does not enable the court to extend time in this case, a discussion of the rule is relevant to whether the court has equitable power independent of the rule to extend time. Under Rule 9006(b), the Bankruptcy Court has some discretion to enlarge the time for filing claims. Rule 9006(b) states:

(1) *In general.* Except as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be done at or within a specified period ... the court for cause shown may at any time in its discretion ... on motion made after the expiration of the specified period permit the act to be done where failure to act was the result of excusable neglect.

. . . .

(3) *Enlargement limited.* The court may enlarge the time for taking action under Rules ... 3002(c) ... only to the extent and under the conditions stated in those rules.[6]

Bankruptcy Rule 9006(b).

Rule 9006(b) plainly allows an extension of the 90–day time limit established by Rule 3002(c) only under the conditions permitted by Rule 3002(c). Rule 3002(c) identifies six circumstances where a late filing is allowed, and excusable neglect is not among them. Thus, the 90–day deadline

for filing claims under Rule 3002(c) cannot be extended for excusable neglect. *See In re Pigott,* 684 F.2d 239, 242–43, n. 2 (3d Cir.1982) (discussing old Bankruptcy Rules 906 and 302, which are similar to new Rules 9006 and 3002, and finding that Rule 906 on enlarging time explicitly excludes Rule 302(e) from discretionary enlargement except as expressly provided by Rule 302 itself).

Zidell acknowledges that the time limit of Rule 3002(c) is not subject to enlargement based on the excusable neglect provision of Rule 9006(b). However, Zidell argues that the bankruptcy court has discretion independent of Rule 9006(b) to enlarge the time under its general equity power. This argument is inconsistent with the express limitations imposed by Rule 9006(b)(3) on the bankruptcy court's discretion to extend time.

Several courts have rejected Zidell's argument, holding that "Bankruptcy Rule 3002(c) is peremptory and that a bankruptcy court lacks *any* equitable power to enlarge the time for filing a proof of claim unless one of the six situations in Rule 3002(c) exists." *In re S.A. Morris Paving Co.,* 92 B.R. 161, 163 (Bankr.W.D.Va.1988) (emphasis added); *see also In re Guarantee Electric, Inc.,* 91 B.R. 164, 165 (Bankr. M.D.Fla.1988); *In re Wilson,* 90 B.R. 491, 493 (Bankr.N.D.Ala.1988); *Miller v. Austin,* 72 B.R. 893, 894, 897–98 (S.D.N.Y. 1987).[7] We agree with these cases and hold that the bankruptcy court cannot enlarge the time for filing a proof of claim unless one of the six situations listed in

---

**5.** On appeal, Zidell abandons its argument that it is entitled to an extension of time based on Bankruptcy Rule 9006(b)(1), which allows the court to extend time where the party's failure to act was due to excusable neglect.

**6.** Rule 3002(c) sets the deadline by which a creditor must file its proof of claim. Under Rule 3002(c), "a proof of claim shall be filed within 90 days after the first date set for the meeting of creditors pursuant to § 341(a) of the Code, except as follows...." Zidell concedes that none of exceptions to the Rule apply.

**7.** The Third Circuit reached a similar conclusion in a Chapter 11 case, *In re Vertientes, Ltd.,* 845 F.2d 57 (3rd Cir.1988). The court discussed

Rule 9006(b), noting that the exceptions provided in 9006(b)(2) and (3) refer to other Rules, including Rule 3002(c), under which the court has no discretion to extend time or can extend time only to the limits set out in the Rules. Therefore, under Rule 9006(b)(1) a bankruptcy court has discretion to extend time to file a proof of claim but only under the circumstances identified in 9006(b)(2) and (3). *Id.* at 93. The court went on to hold that the exceptions did not apply to their Chapter 11 case because Rule 9006(b)(2) and (3) does not refer to Rule 3003, the rule that allows extension of time for cause in a Chapter 11 case.

Rule 3002(c) exists.[8]

Several courts have found that the bankruptcy court has equitable discretion to extend the filing time. One case involved creditors whose filing was late because of erroneous information provided to them by a bankruptcy court clerk. *In re Williams*, 8 B.R. 802 (Bankr.S.D.Fla.1981). Most of the cases allowing late filing of claims involve creditors who did not receive notice of the claims bar deadline. *In re Intaco*, 494 F.2d 94 (1st Cir.1974) (creditor not given notice of the claims filing deadline); *In re Pine Associates, Inc.*, 35 B.R. 49, 51 (Bankr.D.Conn.1983) (creditor lacked actual knowledge of bar date for filing case in a Chapter 11 proceeding); *See also In re Cmehil*, 43 B.R. 404, 408 (Bankr.N.D.Ohio 1984) (stating that the only exception to the strict enforcement of the deadline for filing claims is when the creditor not listed on the schedule fails to receive notice of the bar claims date but refusing to allow late filing where creditor waited two years after receiving notice of the bankruptcy to file).[9] However, we do not believe that those cases can be reconciled with Rule 3002(c).

### III. *Participation in Distribution of Assets*

█ Zidell argues that it should be allowed to participate in the distribution of assets on the same level as those who filed timely claims. Zidell bases this argument on 11 U.S.C. § 726(a)(2)(C) which provides that unsecured creditors who filed late claims will be paid at the same time as unsecured creditors who filed timely claims

as long as (1) the creditor did not have "notice or actual knowledge of the case" in time to file a timely claim and (2) proof of the claim is filed before distribution occurs.

Zidell clearly satisfies the second part of the statute as it filed its claim before the interim distribution occurred. However, Zidell knew of CAL's bankruptcy in early August of 1986, over two months before the claims bar date of September 30, 1986. Zidell had knowledge of the case in time to file a timely claim. Therefore, the district court did not err in denying Zidell's request for participation under § 726.

Zidell argues that lack of knowledge of the no-asset nature of the case means lack of notice of the claims bar date. This interpretation is not consistent with the statutory language and is not supported by case law. For example one case interpreting § 726(c) found that actual knowledge of the bankruptcy proceeding before the claims bar date precludes a creditor from seeking relief under § 726. *In re Kragness*, 82 B.R. 553, 555 (Bankr.D.Or.1988) (mem.) (relief denied to creditor that has actual knowledge of bankruptcy but is not aware of its claim). Actual knowledge was also the standard applied in *In re Columbia Ribbon & Carbon Manufacturing Co., Inc.*, 54 B.R. 714 (Bankr.S.D.N.Y.1985) where the creditor was entitled to relief because it had no actual knowledge of the bankruptcy before the claims bar date and had filed its claim before final distribution.

Zidell's citation to the legislative history of § 726(a) does not alter this conclusion.

**8.** *But see In re Nelms*, 37 B.R. 229 (9th Cir.B.A.P. 1984). In *Nelms*, the bankruptcy court granted a 30-day extension of time to all creditors listed as having settled claims based on confusion among the creditors regarding their duty to file. The bankruptcy appellate panel reversed and vacated the 30-day extension order as improvidently granted, and noted that there was a split in authority over whether the late filing of claims was allowed when none of the exceptions of Rule 302(e) applied. *Id.* at 231. However, the panel declined to rule on the issue and simply concluded that "[A]t the very least, the equitable powers of the bankruptcy court should not have been applied so broadly...." *Id.* We reject the *Nelms* dicta to the extent that it implies that the Bankruptcy Court has equitable power to enlarge the time for filing a

proof of claim when none of the conditions of Rule 3002(c) exist.

**9.** Zidell also cites several other cases in support of its position. *See In re Vertientes*, 845 F.2d 57 (3rd Cir.1988); *Sheftelman v. Standard Metals Corp.*, 839 F.2d 1383 (10th Cir.1987) (per curiam), *cert. dismissed*, 488 U.S. 881, 109 S.Ct. 201, 102 L.Ed.2d 171 (1988); *In re Sitzberger*, 65 B.R. 256 (Bankr.S.D.Cal.1986) (mem.). However, these cases involve Chapter 11 proceedings. A Chapter 11 case is governed by Rule 3003, which allows extensions of time for cause and is not limited by Rule 9006(b)(3) as the extension of time provision in a Chapter 7 case is. *See Vertientes*, 845 F.2d at 59. Therefore, these cases are not dispositive of Zidell's claim.

The House Report cited by Zidell states that the subordination penalty for late filing should not apply where tardiness was due to lack of notice or knowledge of the case and was not the result of a failure to act by the creditor. Sen.Rept. No. 989, 95th Cong., 2d Sess. 97, reprinted in U.S. Code Cong. & Admin.News 5787, 5883. This legislative history clearly indicates that if a creditor knows of the bankruptcy, it does not qualify for relief under § 726.

For the above reasons, we affirm the decision of the district court.

AFFIRMED.