**In re B.C. ENTERPRISES, LTD., Debtor.**

**Bankruptcy No. B–86–05183–PHX–GBN.**

United States Bankruptcy Court,
D. Arizona.

Nov. 12, 1993.

George R. Ferrin, Douglas B. Price, Tempe, AZ, for White Eagle Bldg. Materials, Inc.

Daryl M. Williams, Murphy & Posner, Allan D. NewDelman, Phoenix, AZ, for debtor.

## ORDER

GEORGE B. NIELSEN, Jr., Bankruptcy Judge.

This matter arises on debtor's objection to the claim of White Eagle Building Materials, Inc. ("White Eagle"). The Court will overrule this objection, finding due process mandates allowance of an untimely claim or, alternatively, that this creditor timely filed an informal proof of claim.

### I

White Eagle supplied debtor with materials for construction projects. The account was not paid. To avoid litigation, the parties entered into a stipulated judgment in Maricopa County, Arizona Superior Court Action C–535013.

In the April 15, 1985 Judgment, the parties agreed White Eagle would have judgment in

the principal amount of $66,330.40, plus interest at 10% from November 20, 1984, for Count One, and $126,402.52 plus interest at 12% from March 31, 1984, in Count Two. Costs of $45.00 and attorneys' fees of $550.00 were assessed.

The parties apparently also signed a covenant not to execute. Neither party has filed a copy of this document, however. According to debtor, the parties agreed to eliminate disputes involving what is owed. White Eagle would not execute until other creditors, notably Valley National Bank, were paid. To provide security, a chattel security agreement, later attached to White Eagle's amended claim, was executed in August, 1985. White Eagle acknowledged the collateral was subject to a security interest held by Valley National Bank. Agreement, *supra* at p. 1.

The security interest is perfected by a UCC–1 statement, recorded on September 6, 1985, also attached to the amended claim. In addition to this UCC–1 Filing, there is a second UCC Financing Statement attached to the Amended Proof of Claim, recorded August 15, 1985. This second financing statement covers: "Any and all present and future construction contract 'net profits' of B.C. Enterprises, Ltd., as that term is used in Covenant Not to Execute Agreement dated August ___ (illegible), 1985 . . . ."

Debtor B.C. Enterprises, Ltd. filed a Chapter 11 case on October 24, 1986. Its schedules listed White Eagle Building Materials as an unliquidated, unsecured creditor owed $165,122.52. The nature of the claim was trade debt.

Debtor's schedules reflected White River's address as 301 S. 30th Street, Phoenix, AZ 85034. A creditors' meeting notice returned to the court clerk with a notation White Eagle had moved with no forwarding address.

On November 12, 1986, counsel for White Eagle wrote to counsel for debtor:

Thank you for providing me with a copy of the B C Enterprises petition. . . . I have found a significant error, that being the listing of White Eagle Building Materials, Inc. as an unsecured creditor. As you will see from the enclosures, White Eagle is a *secured* creditor in the amounts of:

(a) $66,330.40, together with interest thereon at the rate of 10% per annum from November 20, 1984 until paid;

(b) $126,420.52, together with interest thereon at the rate of 12% per annum from March 31, 1984 until paid;

(c) $545; and

(d) Plaintiff's accruing costs. . . .

[A]s of the filing of the petition, White Eagle was a secured creditor in an amount of at least $244,945.03 . . .

[L]et me know immediately if you intend to dispute White Eagle's position as a secured creditor, or if the amounts that B C Enterprises claims it owes White Eagle differ from those set forth above. (emphasis original).

The letter apparently included enclosures not attached to the copy in the Court file. A copy was also sent to White Eagle at a Mesa, Arizona address, different from that on debtor's master mailing list.

On February 6, 1991, debtor filed a motion for an *ex parte* order establishing a bar date for filing claims. An order set the bar date for April 8, 1991. An affidavit of mailing was docketed on March 4, 1991. In the affidavit, debtor states the bar date notice was sent to all parties on the master mailing list.

On February 16, 1993, White Eagle filed a motion to amend its claim. In that motion, creditor complains the address used by debtor was incorrect. Creditor asserts it moved before the bankruptcy filing and did not receive its mail, thereby receiving no notice of the bar date. As previously noted, returned court mail indicates no forwarding address was given.

Creditor claims debtor never corrected the mailing matrix, despite a notation on the mailing list indicating returned mail. Movant also argues it filed an informal proof of claim that can be amended after the bar date.

II

On February 16, 1993, White Eagle filed an amended claim. The basis is a chattel

security agreement and an August 15, 1985 debt constituting a secured claim of $244,-945.03, plus post-petition interest. Supporting documents include the chattel security agreement, a UCC–1 referencing an interest in construction contract net profits, a UCC–1 covering the equipment and vehicles referenced in the chattel security agreement and the November 12, 1986 letter from counsel.

### III

According to debtor, the agreements were allegedly breached by White Eagle prebankruptcy. In June, 1986, White Eagle served writs of garnishment to collect the judgment. Debtor argues this violates the covenant not to execute. This breach eviscerated the efficacy of the judgment and chattel security agreement, B.C. Enterprises believes.

Debtor also notes, as shown by counsel's letter, White Eagle was aware of the bankruptcy, although it claims not to have received notice. Despite this knowledge, nothing further was done by White Eagle until January 20, 1993, when counsel for the creditor filed a notice of appearance.

Debtor additionally argues that White Eagle's corporate charter was revoked on October 10, 1991. The White Eagle judgment allegedly expired in April, 1990, because it was not renewed. Additionally creditor's counsel is acting for the National Association of Credit Management ("NACM") based on a 1991 security agreement and memorandum of authority.

The security agreement between White Eagle and NACM granted a security interest in collateral, including "all present and future accounts, contract rights, chattel paper, security agreement, .. instruments, and general intangibles (including all present and future causes of action....)" In addition, NACM was granted a security interest in all proceeds. This agreement was executed by a White Eagle Vice President on March 13, 1991, seven months prior to the revocation of the corporate status. Subsequently, certain shareholders and/or officers of White Eagle executed a "Memorandum of Authority to

Prosecution of Claim and Instructions for Disbursement."

The memorandum states:

The undersigned Shareholders and/or officers (collectively "Shareholders") own collectively 51% or more of the stock in White Eagle Building Materials, Inc. Shareholders acknowledge that a claim has been asserted on behalf of White Eagle [in the bankruptcy] ...

All accounts receivable have heretofore been assigned to Security Pacific Business Creditor, Inc. and to the unsecured creditors of White Eagle Building Materials. Security Pacific has released its [lien] leaving only the unsecured creditors....

[T]he Shareholders authorize George R. Ferrin, P.C. to pursue the White Eagle claim in Bankruptcy Court.... Attorney George R. Ferrin is also authorized to endorse ... to NACM ... all proceeds recovered in connection with the B.C. claim. All proceeds are to be paid to the unsecured creditors committee....

White Eagle argues notwithstanding the returned notice and acknowledge creditor was represented, debtor took no steps to contact White Eagle.

Debtor notes in its supplemental response, the White Eagle creditors who wish to amend the alleged informal claim, failed to comply with Rule 3001(e)(2), *F.Br.R.*

### IV

The first, and most pressing concern, is due process. The address on the schedules and master mailing list for White Eagle was incorrect. The first meeting notice was returned. Thus, White Eagle never received actual notice the bankruptcy was filed. The Clerk made a notation on the master mailing list that mail was returned. This puts debtor on notice the address is invalid, when debtor periodically reviews the administrative file.

Regardless, White Eagle had actual knowledge of the bankruptcy. This is confirmed by the letter of its counsel. There is no reference in the letter either to the mistaken address or failure to receive the first meeting notice. Included in the letter was creditor's current address, which is not the address in

debtor's schedules. The letter does not mention this difference, however.

Based on the certificate of service filed by debtor, White Eagle mail, including the bar date notice, would be undeliverable. Thus White Eagle did not have actual notice of the impending bar date.

■ Due process requires a creditor receive notice of any bankruptcy that is to be accorded finality. *Fireman's Fund Mortgage Corp. v. Hobdy (In re Hobdy)*, 130 B.R. 318, 320 (Bankr. 9th Cir.1991). In the present case, actual notice was not received. This does not end the analysis however, because White Eagle had actual knowledge of the case.

In *City of New York v. New York, New Haven & Hartford R.R. Co.*, 344 U.S. 293, 73 S.Ct. 299, 97 L.Ed. 333 (1953), the Supreme Court rejected the argument that knowledge of a bankruptcy puts a creditor on inquiry notice to learn a claims bar date. "Nor can the bar order ... be sustained because of the city's knowledge that reorganization of the railroad was taking place.... [E]ven creditors who have knowledge of a reorganization have a right to assume ... 'reasonable notice' will be given them before their claims are forever barred." 344 U.S. at 297, 73 S.Ct. at 301. The Court went on to state "when the judge ordered notice by mail, ... New York City acted reasonably in waiting to receive the same treatment." *Id.*

*City of New York* dealt with a case under railroad reorganization. "The distinguishing fact in the *City of New York* case ... is that under Railroad Reorganization, the time limitation for filing a claim was left to the discretion of the Bankruptcy Judge. Thus, imposing a duty upon the creditors to continually inquire into 'possible court orders' was burdensome." *Lompa v. Price (In re Price)*, 79 B.R. 888, 892–93 (9th Cir. BAP 1987), *aff'd*, 871 F.2d 97 (9th Cir.1989).

The Bankruptcy Appellate Panel could distinguish *City of New York* in *Price*, because the *Price* bar date was established by the Bankruptcy Rules, not by judicial discretion. The responsibility to inquire for deadlines was not so burdensome as to outweigh the need for expeditious administration of bankruptcy cases. *In re Price, supra*, at 893.

There are other 9th Circuit cases which examine whether due process has been provided creditors. In *Lawrence Tractor Co. v. Gregory (Matter of Gregory)*, 705 F.2d 1118 (9th Cir.1983), an unsecured creditor received a meeting notice, but not a copy of the Chapter 13 plan. The creditor did not file an objection. The trial court found creditor was bound by the plan. Appellant argued notice was constitutionally deficient. The Ninth Circuit disagreed, holding when debtor files bankruptcy, a creditor is under constructive notice its claim may be affected. It ignores the proceedings at its peril. 705 F.2d at 1123.

In *Zidell, Inc. v. Forsch (In re Coastal Alaska Lines, Inc.)*, 920 F.2d 1428, 1431 (9th Cir.1990), creditor Zidell was not listed and did not receive the first meeting notice. Shortly after filing, Zidell learned that Coastal Hawaiian Lines, Inc. ("CHL") had filed Chapter 7 and listed Zidell as a creditor. CHL is a subsidiary of Coastal Alaska Lines ("CAL"). 920 F.2d at 1429.

Zidell's attorney contacted CHL's attorneys, who were also CAL's attorneys. They informed Zidell CAL had filed bankruptcy, but did not inform counsel that a claims bar date had been set. Based on this conversation, Zidell's attorney understood CAL was a "no asset" case. *Id.*

Zidell's attorney requested copies of the documents filed to date. He received from CAL's attorney copies of the § 341 notice, schedules and the petition. The notice stated: "[It] appears ... there are no assets from which any dividend can be paid.... It is unnecessary for any creditor to file his claim at this time.... If it subsequently appears that there are assets, ... creditors will be notified and given an opportunity to file their claims." *Supra* at 1429.

The schedules revealed Zidell was not a listed creditor. None of the materials referred to the September 30, 1986 claims deadline, or indicated a deadline had been set. On October 30, 1986, Zidell wrote to the Clerk seeking to be added to the CAL mailing list. On January 29, 1987, Zidell received

notice to file a claim in the bankruptcy of CAL's subsidiary CHL. Zidell filed claims in both cases on April 27, 1987. Zidell filed a second claim in the CAL case in late October, 1987. *Id.*

Zidell's claim was disallowed, although the trustee conceded creditor did not receive actual bar date notice. The court held Zidell's due process rights were not violated. *Id.* at 1431. Zidell knew more than simply that CAL was in bankruptcy. It received a copy of the notice, which advised if assets later appeared, creditors would be notified and given an opportunity to file claims. *Id.* "Thus, Zidell knew that, if assets were found, the court would notify the *listed creditors* and give them an opportunity file their claims." *Supra* at 1431 (emphasis original).

In addition, Zidell knew it was not a listed creditor and therefore would not receive notice. Under these circumstances, Zidell had notice and reasonable opportunity to appear. Appellant should have had itself added to the list of creditors. Unlike the creditor in *City of New York*, Zidell did not act reasonably in waiting to receive notice. *Id.*

*Coastal Alaska Lines* distinguished not only *City of New York*, but also *Morgan v. Barsky (In re Barsky)*, 85 B.R. 550 (C.D.Cal. 1988), *aff'd* 933 F.2d 1013 (9th Cir.1991). In *Barsky*, debtor listed Morgan in his schedules at her correct address. Morgan never received the first meeting notice because the clerk failed to effectuate service. 85 B.R. at 551–52.

Sometime between October of 1984 and February of 1985, debtor advised Morgan of the Chapter 13. On February 15, 1985, one month before the confirmation hearing, Morgan received a copy of the plan. The plan did not name Morgan nor provide for her claim. *Id.* at 552.

The plan was confirmed on March 15, 1985. Morgan filed no claim and made no objection until April 1, 1987. On that date, Morgan filed a complaint to determine dischargeability. On July 17, 1987, Morgan filed a proof of claim. The bankruptcy court ruled for debtor. *Id.*

The District Court held that, like the creditor in *City of New York*, Morgan had not received all required notices. The case was distinguishable from *Gregory*, where creditor received all required notice from the clerk. *Id.* at 553. The court rejected debtor's argument creditors are charged with knowledge of matters that the Bankruptcy Rules explicitly require be provided. This theory is directly contrary to *City of New York*. *Id.*

*Coastal Alaska Lines, supra* was able to distinguish *Barsky* because the creditor was listed in the schedules but did not receive notice as required by the Rules. Thus, the creditor's claim could not be barred as untimely. *In re Coastal Alaska Lines*, 920 F.2d at 1431.

■ A reading of these cases concludes that a creditor who is aware of a bankruptcy case is not put on inquiry notice about every matter. *In re Hobdy, supra*, 130 B.R. at 320. What the cases reduce to is burden. In *Coastal*, the creditor knew it was not listed and thus would not receive notice of a bar date. Creditor had sufficient opportunity to appear and have itself added to the mailing list. Unlike the creditor in *City of New York*, Zidell did not act reasonably in waiting to receive notice. *In re Coastal Alaska Lines*, 920 F.2d at 1431.

### V

■ In the present case, Rule 3003(c)(3), *Fed.Br.R.*, gives the court the responsibility for setting a bar date. Such date in Chapter 11 is set in a standard "Order and Notice of Hearing on Disclosure Statement and of Time Within Which to File Proofs of Claim." Within this district, it is set by *ex parte* motion of the plan proponent.

This situation is more like *City of New York* than *In re Price*. Since the Chapter 11 bar date is not set by the Rules, a creditor would need to constantly search for possible court orders, which could be entered at any time *ex parte*. Given judicial discretion in setting a bar date, even a creditor with knowledge of the bankruptcy is burdened to continually inquire.

This case is not like *Coastal Alaska Lines*. In *Coastal*, ·the creditor knew it was not listed on the schedules and knew unless it took action, it would not receive bar date

notice. By contrast, White Eagle was listed as a creditor, but did not receive notice because of an incorrect address. Debtor had notice White Eagle was represented and the creditor's address appeared in a letter sent to counsel. Debtors in possession are charged with knowledge the master mailing list reflects returned mail, since Chapter 11 debtors bear most noticing responsibility. Indeed, debtor's February 26, 1991 affidavit of service attaches a copy of the mailing matrix containing the "returned" notation for White Eagle. Docket item 105.

This case is more like *City of New York* and *Barsky* since White Eagle did not receive all the notice statutorily required. Inquiry notice would charge creditors with the duty of constantly keeping abreast of filings.

This is not a situation where a creditor is on inquiry notice of a bankruptcy and obliged to investigate deadlines of general applicability. *In re Hobdy*, 130 B.R. at 321. It was reasonable, under these facts, for White Eagle to await statutory notice.

*City of New York* is binding precedent. The burden remains with debtor to satisfy due process with notice reasonably calculated, under all circumstances, to apprise parties of the filing and allow an opportunity for objections. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). "Merely showing that the creditor ... was aware of the pendency of the bankruptcy proceeding is not sufficient." *Osborn v. Ricketts (In re Ricketts)*, 80 B.R. 495, 498 (Bankr. 9th Cir. 1987) (Jones, J. concurring).

Since White Eagle's due process rights were violated, the motion to file an untimely claim is granted.

## VI

Alternatively, White Eagle did file a timely informal proof of claim.

To constitute an informal claim, one must state an explicit demand, including the nature and amount, and evidence an intent to hold debtor liable. *Sambo's Restaurants, Inc. v. Wheeler (In re Sambo's Restaurants, Inc.)*, 754 F.2d 811, 815 (9th Cir.1985). Although no document is filed with the court,

an informal proof of claim may arise from demands or correspondence demonstrating an intent to assert a claim against the estate. *Sullivan v. Town & Country Home Nursing Services, Inc. (In re Town & Country Home Nursing Services, Inc.)*, 963 F.2d 1146, 1153 (9th Cir.1992).

In *Sambo's Restaurants*, creditor communicated with debtor's counsel and filed a post-petition complaint. The court ruled these documents constituted an informal claim. Although creditor had not filed papers with the court before the bar date, documents were delivered to a debtor in possession that held a trustee's powers. Therefore communications to Sambo's were equivalent to communications with a trustee. *Id.* at 815.

In the present case, White Eagle's letter apprised debtor of the nature of the claim, its amount and apparently included documents in support. This constitutes an informal claim. The fact White Eagle did not play an active role thereafter makes no difference. Counsel specifically stated he expected to hear if there was a dispute. Nothing was heard. There was little reason for White Eagle to be active. To read into the cases a requirement a creditor must take an active role before a writing becomes an informal claim is erroneous. A court may consider the participation of a creditor *as a factor* in determining whether documents constitute an informal claim. *Anderson–Walker Industries, Inc. v. Lafayette Metals, Inc. (In re Anderson–Walker Industries, Inc.)*, 798 F.2d 1285, 1288 (9th Cir.1986). (emphasis added).

That creditor participation is merely a factor the court considers, is supported by *Town & Country, supra*. There, the court disagreed with the assertion that if a creditor does not pursue a bankruptcy claim, a demand has no legal status. *In re Town & Country Home Nursing Home Services, Inc.*, 963 F.2d at 1153.

Since an informal claim was timely filed, it can be amended. *Wright v. Holm (In re Holm)*, 931 F.2d 620, 622 (9th Cir.1991).

## VII

■ In amending the claim, the assignee of White Eagle must comply with Rule 3001(e), *Fed.Br.R.* Debtor argues the claim should be disallowed because the transferee did not comply with Rule 3001(e)(2). Debtor cites *In re Ellington,* 151 B.R. 90, 98–99 (Bankr.W.D.Tex.1993). In that case, a transferee failed to follow Rule 3001(e)(2) and was not allowed to amend an informal claim. *Supra.*

There were no concerns raised in *Ellington* with due process. Our Panel has held the notice mandated by Rule 3001(e) "must be filed in a reasonable time." *Venhaus v. Wilson (In re Wilson),* 96 B.R. 257, 261 (9th Cir. BAP 1988). The rule's silence on a time limit does not give a transferee carte blanche in filing notice, if a delay prejudices others. If the rule is to deal with problems from post-filing claim transfers, it cannot permit notification after other parties are prejudiced. *Id.*

In *Ellington,* the court specifically found allowance of transferee's claim would prejudice creditors. *Ellington, supra,* at 99–100. Other creditors had litigated or agreed to reduce their claims. The projected distribution parties used for negotiations did not include the transferee's claim. To allow that claim would lower those distributions. *Id.*

In this case, there is no showing it would be unreasonable to allow a successor to file the 3001(e) notice. This is a solvent estate. White Eagle was not given proper notice. The transferee is acting as a trustee to collect assets to pay White Eagle unsecured creditors. Concerns arising out of post-filing claim transfers are not present here.

Further, failure to file notice of a transfer under Rule 3001(e) only affects the standing of the transferee as a creditor. *Official Unsecured Creditors' Committee v. Stein (In re SPM Manufacturing Corp.),* 984 F.2d 1305, 1314, n. 10 (1st Cir.1993). If barred, debtor would simply not make payment to the transferee, but instead pay White Eagle.

## VIII

Issues concerning claim's status and debtor's defenses can be resolved in an evidentiary hearing. Regardless, the Court has preliminary comments. The White Eagle amended claim only reflects a security interest in the collateral described in the agreement.

Based on the facts presented, creditor's claim of a security interest in debtor's judgment against Valley National Bank is weak. The UCC–1 states the financing statement covers "any and all present and future construction contract 'net profits', as that term is used in Covenant Not to Execute Agreement." Presumably, the parties contemplated claimant would have a secured interest in profits arising from present and future construction contracts. It is difficult to make this language cover the proceeds of a lender liability judgment. Thus, initially it does not appear claimant has a secured interest in debtor's judgment. Unless the collateral reflected in the chattel security agreement is still in existence, and given White Eagle's subordinated interest, it appears creditor is unsecured. However, since it is unclear whether claimant is secured or unsecured, the matter is deferred. The court has previously ruled the federal interest rate applies to unsecured creditors. Docket No. 258.

## IX

Due process mandates that claimant may file a claim after the bar date. Alternatively, claimant filed a timely informal claim that can be amended. In either case, if the claim was transferred, claimant must immediately follow Rule 3001(e)(2), *Fed.R.Br.P.* An evidentiary hearing may be required regarding the claim's status and validity.

The parties will appear for a status hearing on the 4th day of February, 1994, at 9:00 a.m., in Hearing Room No. 2, Fifth Floor, United States Courthouse, 230 North First Avenue, Phoenix, Arizona.