**In re Clarence BOOTH, Debtor.**

**No. 02 B 17460.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

March 7, 2003.

Richard Fonfrias, Erik A. Martin & Assocs., Chicago, IL, for Debtor.

Terri M. Long, Law Offices of Terri M. Long, Homewood, IL, for Wells Fargo Financial Acceptance.

## MEMORANDUM OF DECISION

EUGENE R. WEDOFF, Bankruptcy Judge.

This Chapter 7 case has come before the court on a creditor's motion to modify the automatic stay in order to take possession of the debtor's automobile. The issue raised by the motion is whether a Chapter 13 plan, confirmed in a prior bankruptcy case of the debtor, which provided that the creditor's lien was satisfied upon payment of the secured portion of its claim, must be given effect even though the case was dismissed before the plan was completed. For the reasons set forth below, the dismissal of the debtor's prior case had the effect of revesting the creditor with its pre-bankruptcy lien in the debtor's automobile, requiring that the pending motion be granted.

### Findings of Fact

The facts relevant to the pending motion are undisputed. The debtor in this Chapter 7 case, Clarence Booth, was previously the debtor in a Chapter 13 case, filed in October of 1998. In the earlier case, the court confirmed the debtor's amended Chapter 13 plan, filed on December 16, 1998, by order entered on December 21. Paragraph 2 of the plan provided for payment of secured claims at 100% of their allowed amount and payment of unsecured claims at 10%; Paragraph 7 provided (a) that "[u]pon completion of payment of the secured portion of any claim the property securing said claim shall vest in the debtor free and clear of any lien, claim or interest of a secured creditor" and (b) that "[i]f the security is property for which a release of title is necessary, upon satisfaction of said secured claim, the secured creditor shall furnish a release of said title to the debtor."

Among the claims treated by the Chapter 13 plan was a claim of $21,423.32, held by Sunstar Acceptance, and secured by a 1997 Ford Crown Victoria, owned by the debtor. Acting on a motion of the debtor, the court entered an order valuing this vehicle, for purposes of § 506(a) of the Bankruptcy Code (11 U.S.C.), at $15,750, and so allowed Sunstar a secured claim in that amount (with an unsecured claim for the balance).[1] Thereafter, Sunstar assigned its claim to Fidelity Financial Services, and Fidelity Financial was paid,

---

1. Under § 506(a), a creditor with an allowed claim that is less than fully secured by property of the estate is given a bifurcated claim: first, "a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property," and second, an unsecured claim "to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim."

through plan payments of the debtor, $9,422.79 on the allowed secured claim. Fidelity National, in turn, assigned the claim to an entity reflected on the records of the trustee as Security National Consumer, which was paid $3,036.14. Security National, finally, assigned the claim to Wells Fargo Financial Acceptance, and Wells Fargo was paid the balance of the allowed secured claim, $3,291.07. In March 2002, the Chapter 13 case was dismissed, prior to completion, due to a material default in plan payments. During the pendency of the Chapter 13 case, Booth neither sought nor obtained a release of the automobile lien from Wells Fargo.

On May 2, 2002, Booth filed his pending case, under Chapter 7 of the Bankruptcy Code. On June 16, Wells Fargo, asserting its lien on the 1997 Crown Victoria, filed a motion to modify the automatic stay. Two weeks later, on June 30, 2002, an order modifying the stay was entered, but, on August 8, 2002, debtor filed an emergency motion to vacate the order, asserting that the lien had been satisfied during the prior Chapter 13 case. On August 13, 2002, this court entered an order that granted the request to vacate the order modifying the stay, reinstated Wells Fargo's motion to modify the stay, and allowed the parties to brief the question of the effect of the prior Chapter 13 case on the lien asserted by Wells Fargo.

## Jurisdiction

Jurisdiction over bankruptcy cases is placed exclusively in the district courts. 28 U.S.C. § 1334(a). Pursuant to 28 U.S.C. § 157(a), district courts may generally refer bankruptcy cases to the bankruptcy judges of their district, and, by Internal Operating Procedure 15(a), the District Court for the Northern District of Illinois has made such a reference. Pursuant to 28 U.S.C. § 157(b)(1), the bankruptcy judge presiding over a referred case has jurisdiction to enter appropriate orders and judgments in "core proceedings" within the case. A motion to modify the automatic stay is a core proceeding under 28 U.S.C. § 157(b)(2)(G). This court therefore has jurisdiction to enter a final ruling on the pending matter.

## Conclusions of Law

The automatic stay, imposed by § 362(a) of the Bankruptcy Code, prevents, among other things, actions by secured creditors to enforce their pre-bankruptcy liens. 11 U.S.C. § 362(a)(5). However, § 362(d)(2) requires the bankruptcy court to grant relief from this stay if the debtor does not have equity in property subject to a lien, and the property is not necessary to an effective reorganization.

Under this provision, if Wells Fargo has a valid lien on Clarence Booth's automobile, it is clearly entitled to relief from the automatic stay to pursue its remedies against that automobile, including any right to repossession, under applicable nonbankruptcy law. Booth acknowledges that the value of his automobile is less than the lien claimed by Wells Fargo, and Chapter 7 involves liquidation, not reorganization. *In re Rosemond,* 105 B.R. 8, 10 (Bankr.W.D.Pa.1989) (holding that if there is no equity in collateral, relief from stay must be granted in Chapter 7). Booth's only basis for opposing relief from the stay is that Wells Fargo's lien was satisfied during his prior Chapter 13 bankruptcy case, so that Wells Fargo has no basis for taking action against his automobile.

Ordinarily, questions regarding the validity of liens should not be considered in the context of motions for relief from the automatic stay. *In re Vitreous Steel Products Co.,* 911 F.2d 1223, 1232 (7th Cir.1990). However, since the question of the validity of the lien asserted by Wells Fargo arises exclusively under bank-

ruptcy law, and presents a purely legal question, allowing summary disposition, it is most efficient to treat the matter here.

 Moreover, the question of the validity of the lien is not complex. The plan in Clarence Booth's Chapter 13 case was unambiguous in its treatment of secured claims: upon payment in full of any secured claim, the lien supporting the claim was to be deemed satisfied; the collateral was to "vest in the debtor free and clear" of the lien, and, if title documents reflected the lien, the secured creditor was to "furnish a release of said title to the debtor." Wells Fargo cites a number of decisions for the proposition that a plan providing for lien satisfaction upon payment of the secured portion of a bifurcated claim— before the plan is completed—should not be confirmed. *See, e.g., In re Scheierl,* 176 B.R. 498 (Bankr.D.Minn.1995). This is a question that divides the courts, with authority in this district favoring the propriety of lien-satisfaction provisions. *See, e.g. In re Shorter,* 237 B.R. 443 (Bankr.N.D.Ill. 1999). However, the propriety of the plan terms is not at issue now. No objection to the terms was made, the plan containing them was confirmed, and the terms of a confirmed Chapter 13 plan bind creditors, even if the confirmation was erroneous. The Seventh Circuit Court of Appeals made this point forcefully in *In re Chappell,* 984 F.2d 775, 782 (7th Cir.1993):

"The provisions of a confirmed [Chapter 13] plan bind the debtor and each credi-

tor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a). As a general rule, the failure to raise an "objection at the confirmation hearing or to appeal from the order of confirmation should preclude ... attack on the plan or any provision therein as illegal in a subsequent proceeding." *Matter of Gregory,* 705 F.2d 1118, 1121 (9th Cir. 1983). . . .

Thus, the question here is simply whether the lien-satisfaction provisions of Booth's Chapter 13 plan are undone by a provision of law operating apart from the terms of the plan.

 They are. Section 349(b)(3) of the Code provides that in the absence of a contrary court order, the dismissal of a bankruptcy case "revests the property of the estate in the entity in which such property was vested immediately before the commencement of the [bankruptcy] case." [2] Section 349(b)(3) is fully applicable here.

First, Booth's automobile was property of the estate at the time of the dismissal of his case. There is considerable question about the extent of a Chapter 13 estate following plan confirmation, in the absence of a court order defining it, based on the apparent conflict between two sections of the Code, §§ 1306(a)(2) and 1327(b). In

---

2. **Wells Fargo cites authority suggesting that another provision may also be relevant.** One of the decisions upholding lien-satisfaction provisions in a Chapter 13 plan commented, in dicta, that if the Chapter 13 case were dismissed before the plan was completed, a creditor whose lien had been satisfied under the plan would have a right to "re-perfect" the lien to apply to the unpaid, unsecured portion of its claim under § 349(b)(1)(C) of the Code. *In re Murry–Hudson,* 147 B.R. 960, 963 (Bankr.N.D.Cal.1992). However,

§ 349(b)(1)(C) reinstates only liens "voided under section 506(d)," and so has no application here. Under § 506(d), a creditor's lien can be voided "to the extent that [the] lien secures a claim against the debtor that is not an allowed secured claim." This provision was given a very narrow interpretation by the Supreme Court in *Dewsnup v. Timm,* 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992), and is not the basis of the debtor's claim that Wells Fargo's lien has been satisfied.

addition to the property that the debtor owned at the time of the filing bankruptcy, which is property of the estate under § 541, § 1306(a)(2) provides that the Chapter 13 estate includes the income that the debtor earns after the bankruptcy filing, until the case is closed, dismissed, or converted. This seems to imply that the debtor's estate remains intact following confirmation of a plan. On the other hand, § 1327(b) provides that "[e]xcept as otherwise provided in the plan or in the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor." This seems to imply that the estate ceases at the time of confirmation. Courts have resolved the apparent conflict with a number of different approaches. *See* Peter Carpio & Jeffrey L. Cohen, *Note: Modified Estate Transformation: When Does A Chapter 13 Estate Terminate?* 7 Am. Bankr.Inst. L.Rev. 213 (1999) (discussing the conflicting case law). In the Seventh Circuit, it appears that, in the absence of a contrary provision in the plan or confirmation order, the Chapter 13 estate is limited to the property needed by the debtor to perform under the plan. *Black v. United States Postal Service (In re Heath),* 115 F.3d 521, 524 (7th Cir.1997) ("We read the two sections, 1306(a)(2) and 1327(b), to mean simply that while the filing of the petition for bankruptcy places all the property of the debtor in the control of the bankruptcy court, the plan upon confirmation returns so much of that property to the debtor's control as is not necessary to the fulfillment of the plan."). There might reasonably be some question about whether Booth's automobile was property of his Chapter 13 estate, following confirmation, under this standard. However, in Booth's case, the order of confirmation eliminated the question, clearly stating that "[a]ll property of the estate, as specified by 11 U.S.C. Section 541 and 1306 shall remain property of the estate following confirmation." Thus, Booth's automobile continued to be property of the estate at the time of dismissal.

Second, revesting the property of the estate "in the entity in which such property was vested immediately prior to the commencement of the case," as required by § 349(b)(3), revived the lien (a property interest) that had been satisfied by payments under Booth's plan. That lien, at the commencement of the case, was in the full amount owed by Booth to Wells Fargo's predecessor, not limited to the value of the automobile. The satisfaction of the lien was possible only through the operation of the plan during the bankruptcy case; hence, the revesting of the property interest to its pre-bankruptcy state requires the revival of the lien.

Third, this result does not conflict with any general bankruptcy policy. Outside of bankruptcy, Wells Fargo would have been able to insist on full payment of the amount Booth owed on his automobile loan before Wells Fargo would have to surrender its lien. And even in bankruptcy, there is no general rule that a lien can be avoided by paying only the value of the collateral supporting it. In *Dewsnup v. Timm,* 502 U.S. 410, 419, 112 S.Ct. 773, 779, 116 L.Ed.2d 903 (1992), the Supreme Court denied the right to such lien avoidance in Chapter 7 under § 506(d), holding that, as a rule, liens survive bankruptcy. Moreover, the Seventh Circuit has held that a Chapter 7 debtor has no right to redeem collateral by making installment payments of the collateral value under § 722. *In re Edwards,* 901 F.2d 1383, 1386 (7th Cir.1990) (redemption must be by lump sum payment). Booth was able to avoid the lien on his automobile, to the extent it exceeded the value of the automobile, only because Chapter 13 allows "lien stripping," under § 1325(a)(5)—in the context of a plan that requires payments on

other claims. Yet, if a Chapter 13 debtor is allowed to make time payments of only the secured portion of a bifurcated claim, receive a release of the lien, and then dismiss the case without making any payment on the unsecured portion of the claim, the debtor will have obtained the economic equivalent of an installment redemption. It is not unreasonable that § 349(b)(3) should prevent that result.

Since Wells Fargo's total claim had not been paid in full at the time of dismissal, it held a claim to which its revested lien attached, and hence (given the lack of equity in the collateral) its motion for relief from the stay must be granted. The court will enter a separate order to that effect.