In the Matter of FORD BUSINESS
FORMS, INC., Appellant,

v.

SURE CARD, INC., Appellee.

No. 92–6641–CIV.

United States District Court,
S.D. Florida.

Sept. 6, 1994.

Carol L. Cox, Mishan, Sloto, Horrman &
Greenberg, Miami, FL, for appellant.

Samuel Heller, Fort Lauderdale, FL, for
appellee.

### ORDER

ROETTGER, Chief Judge.

**THIS CAUSE** is before the Court on appeal from a decision of the Bankruptcy Court that denied appellant's motion for an extension of time to file a timely proof of claim and to consider appellant's proof of claim that was filed two days after the deadline.

#### Findings of Fact

The facts in this case are undisputed. Appellee, Sure Card, Inc. [Sure Card], filed a Chapter 7 bankruptcy petition on July 7, 1991. At that time, a case between appellant, Ford Business Forms, Inc. [Ford], and Sure Card was pending in state court. On August 8, 1991, Ford's counsel filed a sugges-

tion of bankruptcy in the state court case and served a copy of the suggestion of bankruptcy on Ford's counsel. On October 3, 1991, Sure Card served notice on creditors advising them that (1) a creditors' meeting required under section 341(a) of the Bankruptcy Code, 11 U.S.C. § 341(a), would be held on October 29, 1991 and (2) the deadline for filing a proof of claim was January 27, 1992. Ford, however, did not receive this notice because Sure Card had not listed Ford as a creditor in its schedules, despite Ford's being Sure Card's largest creditor.

Nevertheless, Ford's attorney filed a notice of appearance on behalf of Ford in the bankruptcy case on October 10, 1991. Moreover, William E. Ford, president of Ford, and Ford's attorney actually attended the section 341(a) creditors' meeting on October 29, 1991 even though Ford had not received the notice mailed out to creditors. On November 11, 1991, Ford's attorney sent Sure Card's attorney certain pleadings in connection with the state court case.

Ford, however, did not file a proof of claim until two days after the January 27, 1992 claims bar date. On January 29, 1992, Ford filed (1) a motion for extension of time to file a proof of claim and (2) a proof of claim in the amount of $558,079. If allowed, it is undisputed that Ford's claim would have been the largest single claim of Sure Card's Chapter 7 liquidation.

Judge Weaver denied Ford's motion to file a proof of claim after the deadline. He concluded that constitutional due process was satisfied because Ford not only was aware of Sure Card's bankruptcy case generally, but actually attended the section 341(a) meeting that triggered the 90 day time limit for filing a claim.

The issue before the court is whether a proof of claim filed 92 days after the section 341(a) creditors meeting should be considered a timely filed claim against a Chapter 7 estate when the creditor's president and attorney attended the section 341(a) creditors meeting, but did not receive formal notice of the claims bar date.

*Conclusions of Law*

Bankruptcy Rule 3002(c) governs the time limits for filing proofs of claim in cases filed under Chapters 7, 12 and 13 of the Bankruptcy Code. It states the general rule that a proof of claim "shall be filed" within 90 days after the first date set for the meeting of creditors under section 341(a) and then lists six exceptions that apply in specific situations. It is undisputed that none of the six exceptions apply in this case.

*Due Process and Actual Knowledge*

■ Ford argues that its due process rights were violated because Sure Card did not list it as a creditor on its mailing matrix and it did not receive formal notice of the claims bar date. The Trustee concedes that Ford was not so listed and did not receive formal notice. Nevertheless, it is undisputed that Ford had actual knowledge of the bankruptcy proceedings and that Ford's attorney and president attended the section 341(a) creditors' meeting.

Constitutional due process requires only "notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). In the bankruptcy context, the Eleventh Circuit has held that actual knowledge of the case is sufficient to satisfy constitutional due process requirements. *In re Alton*, 837 F.2d 457 (11th Cir.1988). In *Alton*, the Eleventh Circuit upheld as constitutional section 523(a)(3)(B) of the Bankruptcy Code. 11 U.S.C. § 523(a)(3)(B) requires a creditor in a case involving an individual debtor to file a claim by the claims bar date if the creditor has actual knowledge of the case even if the creditor has not received formal notice of the claims bar date. Otherwise, the claim is discharged.

■ It is significant that the Eleventh Circuit held in *Alton* that constitutional due process requires only notice or actual knowledge *of the bankruptcy case generally;* it does not require notice or actual knowledge of the particular bar date for filing claims.

*Alton,* 837 F.2d at 461 (quoting *Mullane,* 339 U.S. at 314, 70 S.Ct. at 657); *see also In re Sam,* 894 F.2d 778, 781–82 (5th Cir.1990); *United States v. Cardinal Mine Supply, Inc.,* 916 F.2d 1087, 1089 (6th Cir.1990); *In re Coastal Alaska Lines,* 920 F.2d 1428, 1430 (9th Cir.1990); *In re Ray Brooks Machinery Co.,* 113 B.R. 56, 63 (Bankr.M.D.Ala.1989); *In re Haendiges,* 158 B.R. 871, 874 (Bankr. M.D.Fla.1993); 9 **Am.Jur.2d** *Bankruptcy* § 676. Thus, *Alton* stands for the proposition that, in a case involving an individual debtor, mere knowledge of a pending bankruptcy proceeding is sufficient to bar the claim of a creditor who fails to file a claim before the bar date, whether or not that creditor received formal notice of the claims bar date.

But *Alton* does not control the present case because section 523 applies only to individual debtors. *See* 11 U.S.C. § 523(a).[1] The debtor in the present case is a corporation. Despite *Alton,* Ford asserts a constitutional right to formal notice of the bar date based on a second Eleventh Circuit case, *In re Spring Valley,* 863 F.2d 832 (11th Cir. 1989). The Eleventh Circuit decided *Spring Valley* a year after *Alton. Spring Valley* presented a similar issue to the one presented in *Alton:* whether a late filed claim was discharged when the creditor had actual notice of a Chapter 11 bankruptcy but did not receive notice of the claims bar date.

But *Spring Valley* presented the issue in a different context. While *Alton* involved an individual Chapter 11 debtor, *Spring Valley* involved a corporate Chapter 11 debtor. Based on this distinction, the Eleventh Circuit in *Spring Valley* distinguished *Alton* while explicitly not overruling it, and ruled that actual knowledge of the case was *not* sufficient to meet due process requirements in a corporate Chapter 11 case. 863 F.2d at 834–35. Instead, the Eleventh Circuit in *Spring Valley* held that section 1141 of the Bankruptcy Code, 11 U.S.C. § 1141, does not discharge the debt of a creditor who did not have notice of the claims bar date, even if the creditor had actual knowledge of the bankruptcy case generally. *Id.* at 835. The Eleventh Circuit stated in a footnote, however, that their result might be different if the creditor had had actual knowledge of the claims bar date, rather than merely general knowledge of the bankruptcy case. *Id.* at 835 n. 2. It was undisputed that the creditor in *Spring Valley* did not have actual knowledge of the claims bar date. *Id.*

Thus, the Eleventh Circuit has recognized that a higher standard for satisfying due process applies to corporate Chapter 11 cases than to cases involving individual debtors of any chapter: corporate Chapter 11 cases require notice of the bar date for filing claims, *Spring Valley,* 863 F.2d at 835, while cases involving individual debtors of any chapter require only notice of the case generally. *Alton,* 837 F.2d at 460. A four-category matrix emerges: (1) individual debtors in Chapter 7 cases, (2) individual debtors in Chapter 11 cases, (3) corporate debtors in Chapter 7 cases, and (4) corporate debtors in Chapter 11 cases. *Alton* applies the lower due process standard in individual debtor cases in both chapters. *Spring Valley* applies a higher due process standard in corporate debtor Chapter 11 cases. The instant case presents the remaining question: what due process standard applies in corporate debtor Chapter 7 cases?

Though the Eleventh Circuit has not addressed which constitutional due process standard applies in corporate Chapter 7 cases, the statutory language governing Chapter 7 cases, the policies underlying Chapter 7 cases vis-a-vis individual debtor cases and corporate Chapter 11 cases, and the decisions of other courts that have considered this issue all suggest that the lower *Alton* standard for satisfying due process should apply in a corporate Chapter 7 case.

First, the statutory language governing Chapter 7 cases, 11 U.S.C. § 726, is the same language that appears in section 523 that the Eleventh Circuit upheld under due process scrutiny in *Alton.* Specifically, section 726

---

1. Section 523 is one of the "fresh start" provisions in the Bankruptcy Code. The "fresh start" policy applies only to individual debtors; it does not apply to corporate debtors. *See* 11 U.S.C.

§ 727(a)(1) ("The court shall grant the debtor a discharge, unless the debtor is not an individual."); 11 U.S.C. § 1141(d)(3)(C).

contains the same "notice or actual knowledge of the case" language that is found in section 523(a)(3)(B), which applies to individual debtor cases. Section 726 is the provision that governs the distribution of assets in Chapter 7 cases. In setting the priorities for asset distribution in Chapter 7 cases, Section 726 distinguishes between creditors who file after the claims bar date has passed who have "notice or actual knowledge of the case" from those with no such notice or actual knowledge. Section 726 grants the same priority to claims of creditors who file late but who did *not* have "notice or actual knowledge of the case" than it does to claims of creditors who timely filed. 11 U.S.C. § 726(a)(2)(C)(i). But section 726 subordinates claims of creditors who filed late despite having "notice or actual knowledge of the case." 11 U.S.C. § 726(a)(3).[2]

In contrast to sections 523 and 726, the comparable section governing corporate Chapter 11 cases, section 1141, does not contain the "notice or actual knowledge of the case" language. Section 1141(d)(1)(A) states, in pertinent part, that "the confirmation of a plan discharges the debtor from any debt that arose before the date of such confirmation...." Thus, the statutory language of section 1141 that the Eleventh Circuit held required a higher standard of due process in *Spring Valley* is different than the language in section 726, which will govern the present case. The Eleventh Circuit has already upheld as satisfying due process the "notice or actual knowledge of the case" language (albeit from a different code section) that is at issue here. *Alton,* 837 F.2d at 460. Because it addressed the same statutory language that is at issue here, *Alton* is more persuasive than *Spring Valley.*

■ Second, there are policy reasons why the lower *Alton* due process standard, not the higher *Spring Valley* standard, should

apply to Chapter 7 cases. Procedural due process is not an absolute standard; it has always been balanced against the importance of finality in a particular proceeding. *See Mullane v. Central Hanover Bank & Trust,* 339 U.S. 306, 313–14, 70 S.Ct. 652, 656–57, 94 L.Ed. 865 (1950) ("A construction of the due process clause which would place impossible or impractical obstacles in the way [of according finality to judicial proceedings] could not be justified."). Finality is especially important in cases involving individual debtors because of the "fresh start" policy. *Alton,* 837 F.2d at 460. Likewise, in Chapter 7 cases (whether corporate or individual) finality is important because the goal of a Chapter 7 case is to close and distribute a debtor's estate promptly. *See Pioneer Services Co. v. Brunswick Associates Limited Partnership,* —— U.S. ——, ——, 113 S.Ct. 1489, 1495, 123 L.Ed.2d 74 (1993).

But neither of these interests is present in a corporate Chapter 11 case. The "fresh start" policy does not apply to a corporate debtor, *see* 11 U.S.C. § 727(a)(1) ("The court shall grant the debtor a discharge, unless the debtor is not an individual."); 11 U.S.C. § 1141(d)(3)(C), and a corporate Chapter 11 case is not concerned with a prompt distribution of assets. The purpose of a corporate Chapter 11 case is to keep a business operating because it has been determined that the pool of property available to creditors would be larger if the corporation were to continue to operate than if it were closed and its assets were distributed. Unlike a Chapter 7 case, where assets are promptly distributed, in a corporate Chapter 11 case the debtor pays creditors pursuant to a court-confirmed plan, usually over a period of time. *In re Ray Brooks Machinery Co.,* 113 B.R. 56, 63 (Bankr.N.D.Ala.1989). In a corporate Chapter 11 case, there is simply no pressing interest in finality that necessitates a lower due process standard.

---

2. The effect of section 726 underlies this appeal. If the court determines either that Ford's late filed claim should be considered timely filed or that Ford had no notice or actual knowledge of the case when it filed its claim late, then Ford's claim will share on a pro rata basis at the second priority with unsecured creditors who timely filed. *See* 11 U.S.C. § 726(a)(2). But if the court determines that Ford filed late despite having

notice or actual knowledge of the case, then Ford's claim will be subordinated to a third priority. *See* 11 U.S.C. § 726(a)(3); *see also In re Ray Brooks Machinery Co.,* 113 B.R. 56, 63 (Bankr.N.D.Ala.1989); *In re Osman,* 164 B.R. 709, 713 (Bankr.S.D.Ga.1993); *United States v. Cardinal Mine Supply, Inc.,* 916 F.2d 1087, 1089–90 (6th Cir.1990); *In re Coastal Alaska Lines, Inc.,* 920 F.2d 1428, 1430 (9th Cir.1990).

It is thus not by chance that the drafters of the Bankruptcy Code considered actual notice of the case sufficient notice in Chapter 7 and individual Chapter 11 cases, but chose not to have this language apply to corporate Chapter 11 cases. For these policy reasons, the lower *Alton* due process standard should apply to Chapter 7 cases, not the higher *Spring Valley* standard.

Finally, one bankruptcy court in this circuit has addressed whether the higher *Spring Valley* due process standard or the lower *Alton* standard should apply in a Chapter 7 case. In *In re Ray Brooks Machinery Co.*, 113 B.R. 56 (Bankr.M.D.Ala.1989), the court considered both *Alton* and *Spring Valley* and concluded that the lower *Alton* standard should apply in a Chapter 7 case. *Id.* at 64; *see also In re Sam*, 894 F.2d 778 (5th Cir.1990); *In re Coastal Alaska Lines*, 920 F.2d 1428, 1430 (9th Cir.1990). In fact, Bankruptcy Judge Gordon did not look favorably on the creditor's argument based on *Spring Valley:*

> Counsel for the creditor argues that *Spring Valley* and the other cases cited in brief involving [Chapter 11] reorganization are controlling in this [Chapter 7] liquidation case without advancing a good faith argument for not following the provisions of section 726 and without questioning the constitutionality of that section. It is confusing, misleading and inexcusable to ignore existing applicable statutory provisions while espousing case law applicable to other statutes.

*Id.* at 64. In light of all of the foregoing, this court holds that the lower due process standard as set forth in *Alton* should apply in the present Chapter 7 case.

Because Ford's president and attorney attended the section 341(a) creditors' meeting, there is little question that Ford had the actual knowledge *of the case* necessary to permit it to take the steps necessary to protect its rights. Having attended the creditors' meeting, Ford had notice sufficient to apprise it of the pendency of the bankruptcy action. Because that notice was timely enough to afford Ford an opportunity to present its claim, it satisfies constitutional due process requirements under the *Alton* standard.

■ But even were this court to apply the higher *Spring Valley* due process standard to this Chapter 7 case, Ford's argument nevertheless would fail. Here, Ford's president and attorney actually attended the section 341(a) creditors' meeting. Bankruptcy Rule 3002(c) states that "a proof of claim shall be filed within 90 days after the [section 341(a) creditors' meeting]." Because Ford and its attorney attended the section 341(a) creditors' meeting and because, in a Chapter 7 case, the claims bar date is set at 90 days from the date of the creditors' meeting pursuant to Rule 3002(c), Ford had actual knowledge of the claims bar date.[3] In this regard, the footnote in *Spring Valley*, in which the Eleventh Circuit stated that "[o]ur answer might be different if plaintiffs had actual knowledge of the bar date itself rather than merely a general knowledge of the initiation of bankruptcy proceedings[,]" dilutes the reasoning of *Spring Valley* in any application to the instant case. 863 F.2d 832, 835 n. 2. Here, Ford had actual knowledge of the bar date itself. As a result, Ford's argument based on *Spring Valley* is not well founded.

### Excusable Neglect in a Chapter 7 Case

■ Ford also argues that this court should allow it to file a late claim based on "excusable neglect." Excusable neglect is not one of the exceptions listed under Bankruptcy Rule 3002(c). The excusable neglect standard is found at Bankruptcy Rule 9006(b)(1), and allows a court to retroactively enlarge any time period established under the Bankruptcy Rules when a party can show that its failure to act within the prescribed time was the result of excusable neglect. But Rule 9006(b)(1) is subject to the exceptions set forth in Rule 9006(b)(3), and Rule 9006(b)(3) provides that a court may enlarge the time limits established under Rule

---

**3.** Although it is merely speculation, this court cannot avoid the conjecture that Ford stumbled over the "31-day month problem." Ford filed three months after the creditors' meeting, but because two of the intervening months had 31 days, Ford filed on the 92nd day, not the 90th day.

3002(c) only to the extent and under the conditions stated in Rule 3002(c). Excusable neglect is not one of the six exceptions to the 90 day claim period set forth in Rule 3002(c). The Supreme Court has interpreted Rule 9006(b)(3) to mean that the excusable neglect exception is not available to a debtor in a Chapter 7 case, which is governed by the 90 day claims period set forth in Rule 3002(c). *Pioneer Services Co. v. Brunswick Associates Limited Partnership,* — U.S. —, —, 113 S.Ct. 1489, 1495, 123 L.Ed.2d 74 (1993). In *Pioneer,* the Supreme Court observed that

> [t]he "excusable neglect" standard of Rule 9006(b)(1) governs late filings in Chapter 11 cases, *but not in Chapter 7 cases.* The rules' differentiation between Chapter 7 and Chapter 11 filings corresponds with the differing policies of the two chapters. Whereas the aim of a Chapter 7 liquidation is the prompt closure and distribution of the debtor's estate, Chapter 11 provides for reorganization with the aim of rehabilitating the debtor and avoiding forfeitures by creditors. *Id.* (emphasis added).

Based on the Supreme Court's decision in *Pioneer Services,* the excusable neglect standard is not available to Ford.

Accordingly, the decision of the bankruptcy court to deny Ford's motion for an extension of time to file a proof of claim and to consider the proof of claim that was filed as timely filed is **AFFIRMED.** The clerk is directed to close this case. All pending motions are denied as moot.

**DONE AND ORDERED.**