**In the Matter of Randy C. SIMPKINS, Christal L. Simpkins, Debtors.**

**No. 10–10293–WHD.**

United States Bankruptcy Court, N.D. Georgia, Newnan Division.

March 18, 2011.

J. Nevin Smith, Smith Conerly LLP, Carrollton, GA, for Debtors.

James G. Baker, James G. Baker, P.C., LaGrange, GA, Trustee.

R. Jeneane Treace, Office of the United States Trustee, Atlanta, GA, for U.S. Trustee.

### ORDER

W. HOMER DRAKE, Bankruptcy Judge.

Before the Court is the Motion to Allow Late Filed Claim, filed by Community and Southern Bank (hereinafter "Movant"). Rather than allowance of a late filed claim, the relief actually sought by Movant is a finding by the Court that its claim is entitled to a certain priority of treatment, notwithstanding the fact that the claim was filed late. The Motion is opposed by the United States Trustee (hereinafter

"U.S. Trustee"). Following a hearing on the Motion on October 8, 2010, the Court took the matter under advisement. The Motion constitutes a core proceeding, over which this Court has subject matter jurisdiction. *See* 28 U.S.C. § 157(b)(2)(B); § 1334.

## FINDINGS OF FACT AND PROCEDURAL HISTORY

Randy and Christal Simpkins (hereinafter the "Debtors") filed a voluntary petition under Chapter 7 of the Code on January 28, 2010. James G. Baker (hereinafter the "Trustee") was appointed as the Chapter 7 trustee. On March 15, 2010, the Trustee filed a report indicating that he was investigating the possibility of the recovery of assets for the benefit of the Debtors' creditors, and an interim report followed on April 30, 2010. On May 5, 2010, the Trustee filed a report of assets and requested the setting of a deadline for filing claims. The Clerk prepared such a notice on May 6, 2010 (hereinafter the "Claims Bar Date Notice"). The Claims Bar Date Notice established a deadline of August 4, 2010 for filing non-government proofs of claim (hereinafter the "Claims Bar Date"). The Claims Bar Date Notice was served by the Bankruptcy Noticing Center (hereinafter the "BNC") on May 6, 2010.

On Schedule F, the Debtors listed an unsecured debt owed to First National Bank of Georgia (hereinafter "FNBG") in an amount in excess of $8 million. In this entry, the Debtors included the name and address of attorney Gerald L. Blanchard. The Debtors did not schedule any debt to Movant or otherwise include Movant as a creditor entitled to notice in their schedules.

On August 18, 2010, Movant filed the instant motion, which seeks "entry of an order allowing the Bank to file a proof of claim after the expiration of the bar date," and requests in its concluding paragraph that the Court grant Movant "leave to file the Claim after the Bar Date." Prior to filing its motion, however, Movant had already filed its proof of claim. Arguments made by counsel during the hearing and in Movant's post-hearing brief clarify that Movant is seeking a finding that its claim was timely filed due to Movant's lack of notice or knowledge of the Claims Bar Date. The U.S. Trustee objects and asserts that Movant has demonstrated no basis that would allow the Court to treat Movant's claim as timely filed.

Movant's proof of claim evidences an unsecured claim against Randy Simpkins in the amount of at least $4,259,091.61 plus interest, costs, and fees. Movant's proof of claim also indicates that Movant received an assignment of this debt from FNBG, but does not provide a copy of the assignment or otherwise state when Movant acquired the debt.

Because the Debtors scheduled FNBG as the holder of the debt, the Clerk mailed the notice of bankruptcy filing to FNBG and Mr. Blanchard on January 29, 2010. FNBG and Mr. Blanchard were also served with additional documents in the case, including the Claims Bar Date Notice, the order discharging the Debtors, which was served by the BNC on May 20, 2010, and the Trustee's motion to sell property, which the Trustee served on June 2, 2010. The docket does not reflect that any of these documents were returned as undeliverable. Movant has acknowledged that it obtained actual knowledge of the bankruptcy case at some time before the Claims Bar Date.

## CONCLUSIONS OF LAW

■ A bankruptcy case is commenced by filing a petition with the clerk of the bankruptcy court. 11 U.S.C. § 301(a); FED. R. BANKR.P. 1002(a). The filing of the petition under a particular chapter consti-

tutes an order for relief under that chapter. 11 U.S.C. § 301(b). Along with the petition, the debtor is required to file a list of the debtor's creditors, which must include the name and address of each creditor. 11 U.S.C. § 521(a)(1)(A); FED. R. BANKR.P. 1007(a)(1). The Code requires that proper notice of the entry of the order for relief be sent to creditors. 11 U.S.C. § 342(a); FED. R. BANKR.P. 2002(f); 2002(*o*). To do so, the clerk mails Official Form No. 9, Notice of Commencement of Case, to those creditors at the address listed by the debtor on the list of creditors, unless the creditor has filed a request designating a specific mailing address. FED. R. BANKR.P. 2002(g). Official Form No. 9 contains certain explanations for the benefit of creditors and, in a Chapter 7 case, advises creditors not to file a proof of claim unless they receive further notice requesting that claims be filed. *See* FED. R. BANKR.P. 2002(e).

■ Section 501(a) permits a creditor to file a proof of claim. 11 U.S.C. § 501. Under section 502, a claim is "deemed allowed" in the absence of any objection. *Id.* § 502(a). Additionally, claims filed in a Chapter 7 case are not subject to disallowance simply due to the untimeliness. *See* 11 U.S.C. § 501; § 502(b)(9) *(upon objection,* the court shall disallow a claim if proof of the claim is not timely filed except to the extent tardily filed as permitted under section 726(a)(1), (a)(2), or (a)(3)). In this case, Movant filed a claim and no objections to the claim have been filed. Accordingly, Movant's claim is deemed allowed.

■ The question here is one of priority of distribution, rather than a question of allowance or disallowance. Although late claims are not subject to disallowance, they are generally not entitled to payment in the second priority along with the timely filed claims. Specifically, under section

726, property of the estate is distributed first to the holders of priority claims, *id.* § 726(a)(1); second to the holders of allowed, general unsecured claims that are either: 1) timely filed by a creditor, or 2) untimely filed by the creditor if the creditor lacked "notice or actual knowledge of the case in time for timely filing" a proof of claim and the creditor actually filed a claim in time to permit payment of the claim, *id.* § 726(a)(2); and third, to the holders of the remaining late-filed general, unsecured claims. *Id.* § 726(a)(3). Therefore, if a claim is filed after the claims bar date in a Chapter 7 case, it is still entitled to be paid, albeit at a lower priority.

■ For purposes of applying section 726(a)(2), a determination of whether a claim is "timely" is made under Rule 3002(c), which states that the proof of claim must be filed by most creditors not later than ninety days after the first date set for the meeting of creditors under section 341. FED. R. BANKR.P. 3002(c). However, if the Clerk has given creditors notice of insufficient assets to pay a dividend, pursuant to Rule 2002(e), and "subsequently the trustee notifies the court that payment of a dividend appears possible, the clerk shall notify the creditors of that fact and shall notify the creditors that they may file proofs of claim within 90 days after the mailing of the notice." FED. R. BANKR.P. 3002(c)(5). In other words, when the Clerk has told creditors not to file claims, but later the Chapter 7 trustee requests a claims bar date, the Clerk must notify creditors to file claims within 90 days of the mailing of the notice.

■ In a Chapter 7 case, the deadline for filing a proof of claim may be extended by the Court "for cause shown" if the request for enlargement is made prior to the expiration of the deadline. FED. R. BANKR.P. 9006(b)(1). Neither excusable

neglect nor the Court's general equitable powers is a basis for extending the claims bar date in a Chapter 7 case when the request for an extension is made after its expiration. *See* FED. R. BANKR.P. 3002(c); FED. R. BANKR.P. 9006(b)(1); In re Brooks, 370 B.R. 194 (Bankr.C.D.Ill.2007); *In re Damiano*, 04–98349–jem (Bankr.N.D.Ga. Dec. 13, 2005) (Massey, J.).[1] "Notwithstanding strict application of the limits and duties imposed on creditors by the Bankruptcy Code and the Bankruptcy Rules, proceedings in bankruptcy cases are subject to the requirements of due process under the Fifth Amendment to the United States Constitution." *In re San Miguel Sandoval*, 327 B.R. 493, 506 (1st Cir. BAP 2005). "Thus, general principles limiting a creditor's rights in bankruptcy give way when the creditor has not received sufficient notice of the bankruptcy case." *Id.* at 506–07.

▆▆▆ Movant filed its claim after the Claims Bar Date. Therefore, as filed, Movant's claim would be entitled to be paid only after the payment of all claims filed before the Claims Bar Date, unless Movant can establish that its claim is entitled to be paid along with the timely filed claims. Section 726(a)(2) requires a finding that the creditor lacked notice or actual knowledge of the case in time to file a claim. Movant has conceded that it had actual knowledge of the bankruptcy case prior to the expiration of the Claims Bar Date. As a practical matter, it is likely that Movant's receipt of actual knowledge of the case prior to the Claims Bar Date

would prevent Movant from showing an entitlement to any payment from the Debtors' Chapter 7 estate.

In an effort to avoid such treatment, Movant asserts that it is entitled to relief under the due process clause of the Fifth Amendment to the United States Constitution. Movant admits it had actual knowledge of the *case* before the Claims Bar Date, but submits that the Court cannot deprive it of the right to share in the distribution of estate assets without having given Movant notice of the Claims Bar Date, as Movant could not have determined the need to file a claim solely from its actual knowledge of the case and had no obligation to inject itself into the Debtors' case or otherwise investigate the status of the case.

▆▆▆ Constitutional due process "requires notice 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *United Student Aid Funds, Inc. v. Espinosa*, —— U.S. ——, 130 S.Ct. 1367, 176 L.Ed.2d 158, (2010) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). In most instances, receipt of notice of the commencement of the bankruptcy case or actual knowledge of the case in time to file a timely claim would fit this definition. One would presume that, in enacting section 726(a)(2), Congress assumed as much

---

1. Although Movant faults the U.S. Trustee's attorney for not initially opposing the relief requested and for later agreeing with the Court during the hearing that no evidentiary issues exist, the Motion, without aid of Movant's subsequently filed brief, is confusing as to what relief Movant actually seeks. Movant initially sought leave to file an untimely claim, which the U.S. Trustee correctly noted is not required, cited Rule 3003, which applies in a

Chapter 11 case, rather than a Chapter 7 case, and requested an extension, pursuant to Rule 9006(b), on the basis of excusable neglect, which Movant appears to concede does not authorize such relief. It is not surprising to the Court that the U.S. Trustee's attorney initially believed she had no opposition to the requested relief, since the relief actually requested appeared to be either unnecessary or unavailable.

when it adopted "actual knowledge of the case" as the level of notice that would trigger a bar to the receipt of a higher priority distribution. Nonetheless, Movant argues that, when the clerk initially directs creditors not to file claims and later sets a bar date other than that provided by Rule 3002(c), the fact that a creditor has received notice or actual knowledge of the case itself (rather than notice or actual knowledge of the bar date) is not sufficient to inform a creditor of the need to file a claim. Therefore, depriving such a creditor of the right to participate in the distribution of the estate's assets with other creditors who hold timely claims would violate due process requirements.

Movant asserts that binding precedent from the Eleventh Circuit Court of Appeals requires this Court to reach such a conclusion. Specifically, Movant cites *Spring Valley Farms, Inc. v. Crow (In re Spring Valley Farms, Inc.)*, 863 F.2d 832, 835 (11th Cir.1989), for the proposition that actual knowledge of the bankruptcy case is insufficient to satisfy the due process requirements in this case. In *Spring Valley Farms*, the Eleventh Circuit Court of Appeals considered the notice that must be provided to a creditor before its claim can be discharged in a Chapter 11 case. In that case, two related companies filed Chapter 11 cases in North Carolina while a lawsuit, filed by a group of neighboring landowners, was pending against one of the debtors in Alabama state court. The plaintiffs never received any official notice from the bankruptcy court, but did obtain actual knowledge of the North Carolina bankruptcy case from the debtor's attor-

ney. The plaintiffs filed no proofs of claim in the bankruptcy court and did not otherwise participate in the case. Following the entry of a Chapter 11 discharge, the debtor removed the lawsuit to the bankruptcy court in Alabama. The debtor then raised the defense that the debts against it had been discharged. The Alabama bankruptcy court found that the debts were not discharged. On appeal, the district court affirmed the bankruptcy court's order. The court of appeals also affirmed, citing the United States Supreme Court's holding in *City of New York v. New York, N.H. & H.R. Co.*, 344 U.S. 293, 73 S.Ct. 299, 97 L.Ed. 333 (1953), for the proposition that due process requires "reasonable notice" be given to *known* creditors "before their claims are forever barred." *Id.* at 835.

The court in *Spring Valley Farms* agreed with the plaintiffs that, although the plaintiffs were generally aware of the fact that the debtor had filed a bankruptcy petition, the plaintiffs had no duty to inquire for themselves about possible deadlines for filing a claim or to otherwise participate in the case. Since they had no burden to inquire, the plaintiffs acted reasonably in waiting and expecting to receive the "mandatory statutory notice" of the claims bar date. Accordingly, the court held that section 1141 does not discharge the debt of a "creditor who was known to an individual corporate debtor and failed to receive notice under Bankruptcy Rule 2002(a)(8), even if the creditor had actual knowledge of the general existence of the bankruptcy proceeding." [2]

*Spring Valley Farms* is distinguishable from this case. Unlike the creditor in

---

**2.** The Court also notes that, unlike the creditor in *Spring Valley Farms*, it appears that Movant was not a creditor known to the Debtors at the time they filed their petition. In that regard, one might conclude that Movant would not have acted reasonably, even in a corporate debtor's Chapter 11 case, in failing to interject itself into the case, when it knew that the Debtors would have had no reason to schedule Movant as a creditor entitled to notice.

*Spring Valley Farms*, who had no burden of inquiry, Movant's actual knowledge of the Debtors' bankruptcy case did place a burden of inquiry upon Movant. In reaching its conclusion in *Spring Valley Farms,* the court distinguished that case from its earlier holding in *In re Alton*, 837 F.2d 457 (11th Cir.1988). In *Alton,* the court held that, in a Chapter 11 case involving an individual debtor, a creditor's claim will be discharged if the creditor has knowledge of the debtor's case, even in the absence of notice or knowledge of the deadline for filing a complaint objecting to dischargeability. *Alton,* 837 F.2d at 460–61. The court ruled that the exception to discharge provided by section 523(a)(3) did not apply to the debt at issue because the creditor had knowledge of the case, even though the creditor was not provided with the notice of the deadline for filing a complaint to determine dischargeability, as required by Rule 4007(c), and lacked actual knowledge of that deadline. As the court later noted in *Spring Valley Farms,* unlike the creditor in a case involving a corporate case, who had no burden to inquire as to any deadlines in the case, the creditor of the individual Chapter 11 debtor in *Alton* had "a burden of inquiry" placed upon it by section 523(a)(3). Specifically, the court in *Alton* stated that:

> A holding that the language of Rule 4007(c) about notice gives a creditor the right to such official notice before he is under a duty to make inquiries to protect his own rights would conflict with the language of 11 U.S.C. sec. 523, which makes actual notice sufficient to impose a duty-to-inquire on the creditor. We decline to interpret the Rule in a way that would engender such a conflict. [The creditor] was unknown to the Bankruptcy Court. The court complied with its statutory duty: the clerk sent the required notices to all creditors listed on the label matrix provided by debt-

or.... We conclude that there was no due process violation. At a time when he could have protected himself, creditor ... received actual written notice of the bankruptcy proceeding, a notice adequate "to apprise [him] of the pendency of the action and afford [him] an opportunity to present [his] objections." *Mullane v. Central Hanover Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950).

*Alton,* 837 F.2d at 460–61 (internal citation omitted).

■■■ At issue here is the potential impact of section 726(a)(2) on a creditor's claim. Section 726(a)(2) employs the same statutory language used in section 523(a)(3). *See Ford Business Forms, Inc. v. Sure Card, Inc.,* 180 B.R. 294 (S.D.Fla. 1994). Consequently, the Court finds no reason why section 726(a)(2) should not also be found to impose a burden of inquiry on creditors who acquire notice or actual knowledge of the case. *See, e.g., In re Coastal Alaska Lines, Inc.,* 920 F.2d 1428 (9th Cir.1990) (when creditor did not receive "notice" of the case, but had actual knowledge of the case, knew that it was not a listed creditor, and knew that further notice of any bar date would only be sent to listed creditors, creditor had "sufficient notice and reasonable opportunity to appear as a creditor and receive statutory notice" and "should have had itself added to the list of creditors in order to preserve its rights"). The court's decision in *In re Alton* makes clear that, when section 523(a)(3) is at issue, a creditor with knowledge of the existence of the bankruptcy case has a duty to inquire and to participate in the bankruptcy case. Accordingly, this Court holds that, if the creditor's knowledge, combined with information that could be obtained from a reasonable inquiry, would have enabled the creditor to file a timely claim, a finding that the claim

should be paid as a late claim under section 726(a)(3), rather than under section 726(a)(2), does not deprive the creditor of due process.

Movant has also cited *Alcatel Contracting, Inc. v. Slaughter Company & Associates*, 251 B.R. 437 (N.D.Ga.1999), *affirmed, In re Slaughter Co. & Associates*, 219 F.3d 1279 (11th Cir.2000), *reh'g and reh'g en banc denied, In re Slaughter Co. & Associates*, 234 F.3d 713 (11th Cir.2000), *cert. den., Gordon v. Alcatel Contracting, Inc.*, 531 U.S. 1204, 121 S.Ct. 1217, 149 L.Ed.2d 129 (2001). Movant asserts that Alcatel is a case involving "strikingly similar facts." Movant is correct that the *Alcatel* court found a violation of the creditor's due process rights when its claim was treated as untimely under section 726(a)(2). Movant is also correct that the creditor had notice of the case, but no notice or actual knowledge of the claims bar date. The facts of *Alcatel*, however, are quite distinguishable from the facts in this case.

In *Alcatel*, the debtor filed a Chapter 7 case and listed the creditor with an unsecured claim. The clerk issue a notice to all creditors that they should not file claims. A law firm filed a notice of appearance on behalf of the creditor and requested that all notices on behalf of the creditor be sent to the law firm. The trustee later notified the court of the existence of assets, and the clerk sent a second notice directing creditors to file claims by a date certain. The clerk erred, however, by not sending the bar date notice to the law firm, and it was undisputed that the bar date notice sent to the creditor did not reach it because the creditor had moved. Once the law firm learned of the bar date order, it filed a claim on behalf of the creditor and requested it be treated as a timely filed claim entitled to distribution under section 726(a)(2), rather than as a late claim entitled to distribution under section 726(a)(3).

The bankruptcy court, relying on the court of appeals' holding in *Alton*, denied the motion. On appeal, the district court reversed the bankruptcy court, finding that depriving the creditor of a distribution when it had no notice of the bar date would violate the creditor's due process rights. The court distinguished the case before it from *Alton*, noting that, in *Alton*, the court had not failed to fulfill its statutory duty to provide notice to a known creditor. *Alcatel*, 251 B.R. at 440.

Movant argues that the result in *Alcatel* hinged upon the fact that the creditor could not have independently determined the claims bar date in the case, since the claims bar date was established by the clerk in its subsequent notice, rather than being set by a bankruptcy rule or by reference to some other event in the case. Therefore, Movant submits, this case demands the same holding. The *Alcatel* court did state that the case "was not a case where the creditor could independently determine the Bar Date by referring to the Bankruptcy Code or Bankruptcy Rules." *Alcatel*, 251 B.R. at 440. When this statement is viewed in connection with the facts of the case, it becomes clear that the setting of the bar date by the clerk after having notified the creditors not to file claims was not the reason the creditor was unable to protect its interest. The real problem in *Alcatel* was caused by the fact that the creditor, having received notice of the case and having been directed not to file a proof of claim, and having given the matter to counsel, who filed a notice of appearance to insure receipt of future notices, reasonably waited, expecting to receive any further notices of the bankruptcy case, such as notice of a subsequently set claims bar date. Having received notice that the case had no assets, such a creditor would have had no reason to question the fact that it did not receive a further notice. Such a creditor would

also have had no reason to update the clerk's records with its new address, knowing that its counsel had filed a notice of appearance on its behalf.

The highly fact-driven result in *Alcatel* is not contrary to the teaching of *Alton*— that a creditor with actual knowledge of a case must make some effort to inquire about the case and protect its interest, and its failure to do so will not save it from having its claim discharged. The creditor in *Alcatel* took all steps necessary and still, its interest was not protected because of an error on the part of the court, rather than a failure of the creditor to act. For this reason, the Court does not agree that *Alcatel* requires a finding that, under the facts of this case, due process requires the Court to hold Movant's claim timely filed under section 726(a)(2).

Read in the light of the appellate court's decisions in *Spring Valley Farms* and *Alton*, section 726(a)(2) placed a burden of inquiry on Movant, who was not a known creditor. Movant was aware of the existence of the Debtors' case. It appears that Movant never received any formal notice of the bankruptcy case from the Clerk (at least not one addressed to Movant specifically), but knew it had received the claim against the Debtors through a recent assignment. Therefore, when Movant learned of the Debtors' bankruptcy case, it would have had reason to believe it was not on the creditor's list. This knowledge was sufficient to apprise Movant of the need to investigate and request addition to the creditors' list.

Movant may dispute, as a matter of fact, whether it received notice [3] or knowledge

of the Debtors' case in time to file a proof of claim by the Claims Bar Date, but the holding in *Spring Valley Farms* does not require the Court to hold, as a matter of law, that Movant had no duty to inquire as to whether a claims bar date had been set. Given the unusual course of the proceedings in this matter, the Court is willing to receive any evidence from Movant that would support a finding that Movant received actual knowledge of the case too late to allow it to file a timely claim. Movant is invited to request an evidentiary hearing within thirty (30) days of the entry of this Order. Should Movant fail to so, the Court will enter a further order denying Movant's motion.

---

**3.** It may be that notice of the case, and possibly notice of the Claims Bar Date, which was provided to FNBG by the Clerk, could be imputed to Movant, as Movant received the claim at issue through an assignment from FNBG. *See, e.g., In re Feldman,* 261 B.R. 568 (Bankr.E.D.N.Y.2001) (finding that notice sent to creditor could not be imputed to its assignee because debtor knew or should have known that the listed creditor had assigned the judgment debt to the assignee).